Mark D. Pfeiffer, Chief Judge
Following a jury trial, Mr. Terry Lee Lutes ("Lutes") was found guilty of two counts of child molestation in the first degree, for which Lutes was sentenced by the Circuit Court of Caldwell County, Missouri ("trial court"), to two consecutive twelve-year terms of imprisonment. Lutes appeals.
Lutes argues on appeal that the trial court abused its discretion in: (1) admitting evidence of his three prior sex crimes involving minor females; (2) refusing to permit him from asking a question during voir dire regarding his prior convictions; and (3) admitting evidence of the child victim's out-of-court statements. We affirm.
Factual Background[1]
In March of 2014, while staying with his daughter and granddaughter (L.B.[2] ), Lutes *388 placed his finger in L.B.'s vagina, removed his finger to lick it, and then re-inserted his finger in L.B.'s vagina. Thereafter, he compelled L.B. to hold his penis and masturbate him.
The State charged Lutes with two counts of child molestation in the first degree, as a prior offender, for manually touching the vagina of his then six-year-old granddaughter, L.B., and for forcing L.B. to touch his penis.
Prior to trial, the State moved to be allowed to admit evidence pursuant to article I, section 18(c) of the Missouri Constitution. The State presented certified copies of three previous pleas of guilty Lutes had made to sexual crimes involving minors. The pleas of guilty resulted in the following: (1) a 2004 conviction for statutory rape in the second degree for having sexual intercourse with a sixteen-year-old victim in 2001; (2) a 1994 conviction for two counts of sexual assault in the first degree for having sexual intercourse with a fourteen- or fifteen-year-old victim in 1994; and (3) a 1993 conviction for sexual assault in the first degree for having sexual intercourse with a fourteen-year-old victim in 1993.
Lutes objected to the admission of the evidence, arguing, as relevant to his appeal, that the prior convictions were not legally relevant to the charged crime because they were too remote in time and dissimilar in circumstances. The trial court concluded that the propensity evidence was both logically and legally relevant and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Thus, the evidence of the three convictions was admitted at trial over Lutes's objection.
As Lutes was aware that the trial court intended to allow his conviction history to be admitted at trial, his trial counsel requested that he be allowed to ask the following question as "his record" of the question he wished to ask during voir dire of the venire panel:
I anticipate that the Prosecutor Joe will present during the course of this trial evidence of Terry Lutes' prior criminal conviction history regarding child molestation of other young women. Would that fact cause anyone here knowing that that could be presented to you as jurors present a problem in any one of you being fair and impartial as jurors in this case?
The State objected, and the trial court responded that, "I'm not going to let you ask that [question]." (Emphasis added.) Defense counsel did not submit an alternately phrased proposed question.
At the first trial, L.B. was present and testified, but that proceeding resulted in a mistrial. In anticipation of the second trial, the subject of the instant appeal, the State made numerous attempts at ensuring L.B.'s presence at the trial, including service of a subpoena by the Wabaunsee County, Kansas Sheriff's Department commanding her to appear and testify and obtaining an order from a judge in Kansas to compel her attendance. A return of service showed that the order was served to L.B.'s address. L.B.'s father, however, informed the State that he refused to bring L.B. back to Missouri to testify. Hence, at the second trial, L.B. did not appear. The State argued that L.B. was, therefore, "unavailable"
*389 to testify when various objections were made by Lutes to the admission of evidence requiring L.B.'s unavailability at trial, including a video-recording of L.B.'s testimony at the first trial. The trial court admitted the evidence.
The evidence at the second trial was as follows. In 2014, L.B., her mother, and her half-brother went to live with her half-brother's grandparents, John Giese ("Giese") and Lynda Sloan ("Sloan"). L.B. and her family lived downstairs while Giese and Sloan lived upstairs. In March of 2014, Lutes came to stay with L.B.'s family for a few days. Giese walked downstairs one of those mornings and saw L.B. sleeping on Lutes's bare chest, which bothered Giese.
In L.B.'s video-recorded testimony from the first trial, L.B. testified:
[W]hen it was bedtime, [Lutes] said, "Come here," and I did because I was really tired and I just woke up to get a glass of water.... So he grabbed my hand and he put it down his pants, and then he rubbed it on his bad spot, and then he took his finger and he licked it and he put it in my private-my bad spot, and-he started to lick it again-and he kept doing it.
The Sunday after Lutes had left, L.B.'s mother asked Giese to come downstairs. Giese testified that L.B. told him that Lutes "in the middle of the night put his finger down-down there and ... she said he shook, and-and he put ... his finger in her, and then stuck it in his mouth and licked it." He also testified that L.B. indicated that Lutes also had her play with his penis. Giese accompanied L.B. and her mother to the local police department. L.B. was taken to St. Joseph, Missouri, for a forensic interview and to Children's Mercy Hospital for a SAFE[3] exam.
Forensic interviewer Trenny Wilson ("Wilson") testified about the interview she conducted with L.B., which was video-recorded. In the video, L.B. described Lutes touching the inside of her "peepee" with his finger and putting his finger in his mouth and then sliding it back into her "skin." She said Lutes also put her hand in his pants and forced her to touch his "boy's bad spot."
Lutes presented no evidence in his defense. He was found guilty on two counts of child molestation in the first degree and sentenced to twelve years of imprisonment on each count to be served consecutively. Lutes now appeals.
I.
In Point I, Lutes argues the trial court abused its discretion in allowing the State to introduce evidence of his three prior convictions for statutory rape and sexual assault, under article I, section 18(c) of the Missouri Constitution, because he contends the evidence was not legally relevant in that any probative value was substantially outweighed by the danger of unfair prejudice.
The trial court's decision to admit Lutes's three prior convictions for sexual assault of female minors under article I, section 18(c), like all claims of evidentiary error, is reviewed for an abuse of discretion and will not be disturbed unless this court finds that the trial court's exercise of discretion was clearly against the logic of the circumstances. State v. Prince , 534 S.W.3d 813, 818 (Mo. banc 2017). "[I]f reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."
*390 Anglim v. Mo. Pac. R.R. Co. , 832 S.W.2d 298, 303 (Mo. banc 1992). Further, this court reviews the decision of the trial court for prejudice, not mere error, and will reverse only if we find that the error was so prejudicial as to deprive the defendant of a fair trial. Prince , 534 S.W.3d at 818.
Propensity evidence is "evidence of uncharged crimes, wrongs, or acts used to establish that a defendant has a natural tendency to commit the crime charged." State v. Shockley , 410 S.W.3d 179, 193 (Mo. banc 2013) (internal quotation marks omitted). It is well established that "proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial." State v. Primm , 347 S.W.3d 66, 70 (Mo. banc 2011) (internal quotation marks omitted). The law permits the State to try a defendant only for "the offense for which he is on trial" and "[t]his precludes the State from unjustifiably introducing evidence of a defendant's prior, uncharged crimes or bad acts." State v. Batiste , 264 S.W.3d 648, 650 (Mo. App. W.D. 2008) (citing State v. Ellison , 239 S.W.3d 603, 606 (Mo. banc 2007) ).
Such evidence may be admitted for "purposes other than to establish the defendant's propensities" to commit the charged offense. Id. at 651. Such purposes include establishing "motive, intent, absence of mistake or accident, identity, or a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other." Id.
Evidence of prior criminal acts may be admissible for these alternate purposes only if [it] is both "logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, and if [it] is legally relevant, in that its probative value outweighs its prejudicial effect."
Id. (quoting Ellison , 239 S.W.3d at 607 ).
These general standards, however, have been modified by recent changes to the Missouri Constitution in cases involving crimes of a sexual nature against minors. Article I, section 18(c) of the Missouri Constitution currently provides as follows:
[I]n prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.
As this Court has previously noted, "in the context of sex crimes involving minors, the provision unequivocally supersedes the Supreme Court of Missouri's evidentiary rulings that once prohibited propensity evidence." State v. Matson , 526 S.W.3d 156, 158 (Mo. App. W.D. 2017). "The effect of Section 18(c)[4 ] was to relieve propensity evidence in certain types of cases from the absolute ban on admissibility, assuming logical and legal relevance is otherwise established." Id.[5]
*391 On appeal, Lutes does not argue that the challenged evidence was not logically relevant but only challenges its legal relevance in that he claims the trial court's decision that the danger of unfair prejudice did not substantially outweigh the evidence's probative value was an abuse of discretion. More specifically, Lutes argues that his previous convictions were too remote in time and dissimilar to his present charges to have any probative value, and additionally, the evidence should have been excluded due to the substantial danger of unfair prejudice resulting from its admission.
In support of his arguments, Lutes cites to a number of cases that were decided before the enactment of article I, section 18(c) and cases from foreign jurisdictions.[6] Lutes neglects, however, to cite to our own recent (and post-enactment of article I, section 18(c) ) Missouri Supreme Court precedent, State v. Prince , squarely addressing the issue presented in this appeal.
In State v. Prince , the defendant was charged with first-degree murder, felony abuse of a child, and forcible sodomy for sexually assaulting and killing his girlfriend's four-month-old daughter. 534 S.W.3d at 816-17. Specifically, the defendant was charged with sexually assaulting the four-month-old infant child anally, causing internal tearing that led to the infant losing one-third of her blood supply; likewise, the defendant's assault also included multiple bruises to the infant's face, chest, and legs, as well as a cranial laceration, all as a result of the sexual assault. Id. The State sought to admit into evidence at his trial the defendant's previous juvenile adjudication record for manual-to-genital contact with his six-year-old niece, which occurred nine years before the conduct at issue at trial. Id. The defendant challenged the admission of the evidence, arguing that his juvenile adjudication was too remote in time and dissimilar to his present charges to be legally relevant. Id. at 820.
Addressing the defendant's argument that the juvenile adjudication was too remote in time to be logically relevant because it occurred nine years before the conduct at issue at trial, our Supreme Court explained that there is no rigid rule regarding when acts may be found to be too remote to be relevant, but rather each such determination depends on the facts of the case. Id. Remoteness in time must be considered together with the factual similarities of the prior acts and the current crime charged, as the issues are related. Id. The Court then cited with approval a *392 number of cases from other jurisdictions, finding that various lengths of time were not too remote, a number of which approved the admission of evidence regarding events that had occurred over twenty years before the crime charged. Id. ; see United States v. Emmert , 825 F.3d 906, 909 (8th Cir. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 1349, 197 L.Ed.2d 535 (2017) (admitting offense from up to twenty years prior to conduct at issue); United States v. LeMay , 260 F.3d 1018, 1029-30 (9th Cir. 2001) (finding prior conduct committed eleven years earlier when the defendant was twelve years old admissible); United States v. Meacham , 115 F.3d 1488, 1494-95 (10th Cir. 1997) (finding prior sexual conduct thirty years earlier was not too remote); State v. Antonaras , 137 Conn.App. 703, 49 A.3d 783, 792 (2012) (admitting crimes from nine to twelve years prior); State v. McGuire , 135 Idaho 535, 20 P.3d 719, 723 (Idaho Ct. App. 2001) (admitting evidence of crimes from twenty-three years prior); Smith v. State , 745 So.2d 284, 289 (Ala. Crim. App. 1998) (finding the time interval of fourteen and eighteen years not too remote to be inadmissible). And, subsequent to the holding in Prince , another Missouri court has held that prior misconduct occurring twenty-plus years from the charged offense was not too remote and, instead, was "still within the range of the cases cited with approval in Prince ." State v. Peirano , 540 S.W.3d 523, 529 (Mo. App. S.D. 2018).
Regarding the topic of similarity of the offenses, the Prince court stated: "It is well established that the victim and the conduct at issue need only be similar-not identical-to sustain the admission of uncharged misconduct evidence." Prince , 534 S.W.3d at 820 (internal quotation marks omitted). The Prince court then went on to conclude that the defendant's prior misconduct of felonious manual-to-genital contact with a six-year-old minor female relative nine years prior to the charged offense, while not identical to sexually assaulting a four-month-old non-relative infant female child anally, was "similar enough in nature to be legally relevant." Id. at 821.
Then, the Prince court noted: "While the admission of Prince's juvenile adjudication may have been prejudicial to his defense, its probative value was not substantially outweighed by the danger of unfair prejudice." Id. The Court considered it relevant that the State did not introduce the evidence at trial in an inflammatory manner but only presented the official adjudication record to the jury. Id. ; see also United States v. Kelly , 510 F.3d 433, 438 (4th Cir. 2007) (finding admission of official conviction record and no inflammatory testimony to not be unfairly prejudicial). Ultimately, the Court concluded that the trial court had not abused its discretion in admitting Prince's prior juvenile adjudication. Id.
More recently, the Missouri Supreme Court issued its opinion in State v. Williams , 548 S.W.3d 275 (Mo. banc 2018), and again addressed legal relevance and unfair prejudice in the context of article I, section 18(c). In Williams , the defendant's prior "bad act" was his plea of guilty in 1996 to first-degree statutory sodomy for inserting his thumb in a minor female child's vagina. Williams , 548 S.W.3d at 278-79. Then, twelve to seventeen years later, the defendant began molesting a minor female child repeatedly during the ages of eight to thirteen by touching the minor child's genitals and bottom and by forcing her to perform manual and oral sex acts upon him. Id. at 279-80. In concluding that the trial court carefully considered factors of legal relevance (including remoteness in time and similarity of conduct), the Williams court noted *393 that the trial court had conducted a hearing prior to the trial for the express purpose of hearing and considering defense counsel's objections to the prior bad act evidence and, in so doing, the trial court had demonstrated its commitment to careful consideration of the issues impacting legal relevance of the evidence and was entitled to "the level of deference that the 'abuse of discretion' standard requires." Id. at 288.
The Supreme Court then stated:
The determination of how much and what kind of probative value particular propensity evidence may have, the nature and extent of the danger of unfair prejudice presented by that evidence, and whether the former is substantially outweighed by the latter, are intensely case-specific questions. The relevant factors to be considered in deciding these questions will vary from case to case, as will the weight to be afforded any one particular factor. As a result, the factors set forth in this opinion, and the weight given to those factors, are merely illustrative of the legal relevance analysis article I, section 18(c) requires.
Id. at 288 (emphasis added).
Of equal importance to the Supreme Court in Williams was an analysis of the risk of unfair prejudice. The Supreme Court noted that there was less risk of prejudice where: the jury knows that the defendant had been convicted for the past criminal acts, id. at 289-90 ; the manner in which the past criminal acts evidence is presented is by way of a short, dispassionate presentation (as opposed to live testimony from a former victim), id. ; "if the prosecution spends relatively little time on the issue of a defendant's prior crimes and merely uses the evidence for its proper purpose (namely, to suggest the defendant has a propensity to commit the charged crime), the danger decreases and may-on balance-not be unfair," id. at 291 ; "[f]inally, the state only mentioned Williams's prior conviction twice during its closing argument," id. Given that the record in Williams reflected that the prior conviction was reported to the jury by way of a stipulated and dispassionate identification, no live testimony from former victims was presented as evidence, the prosecution spent little time on the issue of the defendant's prior crime, and only mentioned the prior conviction twice in its closing argument, the Court concluded that "it simply cannot be said the state increased the danger of unfair prejudice in this case by unduly emphasizing Williams's prior criminal acts, and at no time did the state implicitly or explicitly invite the jury to engage in improper reasoning." Id.
Ultimately, the Williams court concluded that the trial court had not abused its discretion in admitting evidence of Williams's prior conviction.
Here, within ten to twenty-one years prior to the current charged offense, Lutes was convicted three times of felonious sexual misconduct with minor females[7] in *394 which the principal purpose of his misconduct was sexual gratification involving his penis and his young victims' vaginas.[8] Similarly, in the charged offenses, Lutes was again seeking sexual gratification by inserting his finger in his young victim's vagina and, likewise, sought sexual gratification by compelling his young female victim to masturbate his penis. The trial court held a separate pre-trial hearing for the express purpose of hearing and considering Lutes's objections to the "prior bad act" evidence before ruling on the admissibility of the evidence. The evidence was presented in the case in a short and dispassionate fashion. And, the State only briefly mentioned the prior conviction evidence once in closing argument.
As in Prince and Williams , the evidence concerning Lutes's previous convictions "had considerable probative value and the danger of unfair prejudice from that evidence was not great. This Court holds the latter did not substantially outweigh the former and, therefore, the [trial] court did not abuse its discretion by admitting that evidence." Williams , 548 S.W.3d at 292.
Point I is denied.
II.
In Point II, Lutes argues the trial court abused its discretion in prohibiting defense counsel from asking the venire members whether evidence of "Lutes's history of prior convictions would render them unable to be fair and impartial."
This court reviews rulings by the trial court regarding the appropriateness of a question during voir dire for an abuse of discretion. State v. Oates , 12 S.W.3d 307, 310-11 (Mo. banc 2000). This is because the trial court is in the best position to determine "whether a disclosure of facts on voir dire sufficiently assures the defendant of an impartial jury without at the same time amounting to a prejudicial presentation of the evidence." Id. (internal quotation marks omitted). "Where reasonable persons can differ about the propriety of the action taken by the trial court, no abuse of discretion will be found." State v. Johnson , 207 S.W.3d 24, 40 (Mo. banc 2006). Even if this court finds error, the error is not reversible error unless the defendant is able to demonstrate that there is a "real probability" that he was prejudiced. Oates , 12 S.W.3d at 311.
Every defendant is entitled to a fair and impartial jury. State v. Baumruk , 280 S.W.3d 600, 614 (Mo. banc 2009) ; see also U.S. CONST. amends. VI, XIV ; MO. CONST. art. I, § 18(a). "A necessary component of the guarantee for an impartial jury is an adequate voir dire that identifies unqualified jurors." Johnson , 207 S.W.3d at 40. "However, due to the myriad of possible inquiries, the trial court has discretion to judge the appropriateness of specific questions."
*395 State v. Clark , 981 S.W.2d 143, 146 (Mo. banc 1998). "Most importantly, counsel may not try the case on voir dire. For example, argument or 'a presentation of the facts in explicit detail' during voir dire is inappropriate.... Counsel may not seek to predispose jurors to react a certain way to anticipated evidence.... The limitation is not as to the information sought but in the manner of asking. " Id. at 146-47 (emphasis added) (citations omitted).
Here, "the manner of asking" the proposed voir dire question by Lutes was not factually or legally accurate. Although Lutes had been convicted in the past of rape and sexual assault of minor female children , not women , Lutes proposed the following question:
I anticipate that the Prosecutor Joe will present during the course of this trial evidence of Terry Lutes' prior criminal conviction history regarding child molestation of other young women. Would that fact cause anyone here knowing that that could be presented to you as jurors present a problem in any one of you being fair and impartial as jurors in this case?[9]
(Emphasis added.) As worded, this question was misleading. First, it gives the impression that the previous convictions were for "child molestation," instead of "rape" and "sexual assault"; and it also gives the impression that the victims were "women," not "children." Second, the last sentence of the proposed question fails to properly distinguish the difference between the appropriateness of exploring improper bias of a venire person related to a defendant's prior felony sex offense convictions with a venire person's article I, section 18(c) constitutional authorization to properly consider those prior convictions as "demonstrating the defendant's propensity to commit the crime with which he or she is presently charged." Thus, as worded, the proposed question was irrelevant, misleading, and objectionable. The trial court's ruling sustaining the State's objection to this question was, thus, not an abuse of discretion.
Nothing in our ruling today is intended to suggest that Lutes or other defendants similarly situated to Lutes are generally prohibited from inquiring of the venire panel's societal bias about a prior felony sex offender; however, such voir dire must be factually accurate and must not run afoul of the express authorization of a jury to properly consider such evidence within the constraints of article I, section 18(c) of the Missouri Constitution.[10] Here, Lutes's *396 question, as posed, was objectionable for the reasons we have identified. It was Lutes's responsibility to frame the proposed voir dire in a factually and legally accurate fashion. He failed to do so and it was not the responsibility of the trial court to, sua sponte , re-phrase the question for him.
Finally, even were we convinced that the trial court had abused its discretion in its ruling as to Lutes's proposed voir dire venire panel examination, we question whether Lutes has demonstrated that there was a "real probability" that he was prejudiced. Oates , 12 S.W.3d at 311. The use of the prior convictions at trial was limited and was presented in a non-inflammatory manner. The introduction of the evidence at trial presented only the facts as related to Lutes's guilty pleas to his aforementioned offenses, and his prior convictions were not otherwise mentioned again in the presentation of evidence at trial. And, in closing argument, the State only briefly mentioned Lutes's previous convictions once. "In the context of all the evidence, the evidence of [Lutes's] prior criminal act[s]-introduced largely by way of a short, dispassionate stipulation-was not so jarring as to create an unacceptable danger of unfair prejudice." Williams , 548 S.W.3d at 291.
Under these circumstances, we simply are not persuaded that the trial court's ruling as to Lutes's proposed voir dire question was "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration," Johnson , 207 S.W.3d at 40, nor has Lutes demonstrated that there was a "real probability" that he was prejudiced by the trial court's ruling, Oates , 12 S.W.3d at 311. Hence, the trial court did not commit reversible error.
Point II is denied.
III.
In Point III, Lutes argues that the trial court abused its discretion in admitting the evidence of L.B.'s out-of-court statements to Giese and Wilson and her prior trial testimony because he claims that the State failed to demonstrate L.B.'s "unavailability."
The trial court's determination that a witness is "unavailable" for the purposes of the Confrontation Clause and section 491.075 is reviewed for an abuse of discretion. State v. McGee , 284 S.W.3d 690, 707 (Mo. App. E.D. 2009) ; State v. Sanders , 126 S.W.3d 5, 13 (Mo. App. W.D. 2003). However, whether the admission of challenged evidence at trial has violated the Confrontation Clause is a question of law that this court reviews de novo. State v. Justus , 205 S.W.3d 872, 878 (Mo. banc 2006).
The Sixth Amendment to the United States Constitution provides that every defendant in a criminal prosecution has the right to be confronted with the witnesses against him. U.S. CONST. amend. VI.[11] However, under certain circumstances, *397 out-of-court statements or previous testimonial statements of an "unavailable" witness may still be admitted at trial even though the defendant will not have a second opportunity to confront the witness. See State v. Irby , 254 S.W.3d 181, 193-94 (Mo. App. E.D. 2008) (explaining that the Confrontation Clause is not violated where the witness is unavailable and has given testimony in a previous judicial proceeding and was subject to cross-examination by the defendant).
"Unavailability" is also relevant regarding application of section 491.075, which permits the admission into evidence of a statement, not otherwise admissible, made by a child under the age of fourteen in the prosecution of a defendant for a crime of a sexual nature if it meets certain criteria. Pursuant to section 491.075.1, if the trial court concludes in a hearing conducted outside the presence of the jury that (1) "the time, content and circumstances of the statement provide sufficient indicia of reliability" and (2) "[t]he child or vulnerable person is unavailable as a witness," then the statement is admissible. § 491.075.1.
"To prove unavailability of a witness, the prosecution has the burden to prove a good faith effort, exercising reasonable diligence, to obtain the presence of the witness." Irby , 254 S.W.3d at 193. The burden is satisfied where the State shows that it obtained an out-of-state subpoena that orders the victim to appear and testify at trial, such as the procedure provided by section 491.400 et seq. , which is Missouri's enactment of the Uniform Law to Secure Attendance of Witnesses From Within or Without State in Criminal Proceedings ("Uniform Law"). Id. ; accord State v. Woods , 336 S.W.3d 473, 475 (Mo. App. E.D. 2011) ("Missouri cases have considered the State's attempt to utilize the Uniform Law as evidence of the State's good faith effort to obtain the witness's attendance at trial.").
Lutes does not contest the State's showing that it complied with the Uniform Law to attempt to secure L.B. as a witness by obtaining and having served on L.B. an order and subpoena from a judge in the place she resides directing her to appear and testify at Lutes's trial. Rather, Lutes argues that the State should have gone further. Lutes cites to a discretionary provision of the Uniform Law, section 491.420.1, providing that in addition to the actions taken above, the court may also issue a certificate that includes a recommendation "that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state." Lutes argues that good faith and due diligence required that the State request that the child be seized from her custodial parent by law enforcement and compelled to attend trial.
We disagree. As noted above, Missouri courts have held that the State may show a good-faith effort to secure a witness by compliance with the Uniform Law and no case cited by Lutes or identified by this court has held that, in so doing, the State must attempt to enforce a subpoena ignored by a custodial parent by requesting that the trial court issue a certificate ordering that the child be taken away from her parent and placed into custody. The trial court's decision as to whether the State made a good-faith effort to bring a witness to trial is reviewed for an abuse of discretion. Irby , 254 S.W.3d at 193. Here, it was within the trial court's discretion to conclude that efforts to take the child from another state and into custody were not required to establish the State's good-faith effort to secure L.B.'s attendance at the *398 second trial. Frankly, it would have been reasonable for the trial court to conclude that the request for and issuance of an order seeking the seizure of a young child from her custodial parent in another state would have further traumatized and punished the child simply for her parent's refusal to comply with the subpoena.
The State utilized the Uniform Law to secure L.B. as a witness but was met with the adamant refusal of her custodial parent to comply. There is no indication that the State did not act in good faith in its efforts to utilize the Uniform Law to secure L.B. as a witness. Furthermore, here, the prior testimony of L.B. was from the first trial and, hence, subject to cross-examination by Lutes's counsel during the first trial-which lessens any claim of prejudice by Lutes.
The trial court did not abuse its discretion in concluding that the State made a good-faith effort and exercised reasonable diligence to bring L.B. to trial and that L.B. was, therefore, "unavailable" at trial.
Point III is denied.
Conclusion
The judgment of the circuit court is affirmed.
Anthony Rex Gabbert, Judge, concurs.
Alok Ahuja, Judge, dissents in separate opinion.
DISSENTING OPINION
Alok Ahuja, Judge
I respectfully dissent.
In my view, Lutes is entitled to a new trial for two separate reasons. First , evidence of Lutes' decades-old convictions for having sexual intercourse with fourteen-to-sixteen-year-olds should not have been admitted in this case, which involves allegations of hand-to-genital conduct between Lutes and his six-year-old granddaughter. The prior convictions should have been excluded because they are remote in time, and because the acts and victims involved in the prior cases bear no meaningful similarity to the acts and victim involved in this case. Second , if the prior convictions were properly admitted, Lutes was entitled to ask prospective jurors during voir dire whether they could remain fair and impartial despite the fact that he was a convicted felony sex offender.
I.
Lutes was charged in this case with two counts of child molestation in the first degree for touching the vagina of his six-year-old granddaughter with his hand, and for forcing the victim to touch his penis with her hand. The First Amended Information alleged that the acts occurred "on or about February 12, 2014." Over Lutes' objections, the State was permitted to introduce evidence at trial of three prior felony convictions Lutes had (each resulting from a guilty plea): (1) a 2004 conviction for statutory rape in the second degree, for having sexual intercourse in 2001 with a female victim who was less than seventeen years old; (2) a 1994 conviction for two counts of sexual assault in the first degree for having sexual intercourse with a fourteen- or fifteen-year-old victim; and (3) a 1993 conviction for sexual assault in the first degree for having sexual intercourse with a fourteen-year-old victim.[1]
*399 The circuit court abused its discretion in admitting the evidence of Lutes' prior convictions, because those convictions were remote in time; the nature of Lutes' conduct in the prior cases (sexual intercourse) was fundamentally different from the charged offenses (involving hand-to-genital contact); and Lutes' victims in the prior cases (fourteen-to-sixteen-year-old females to whom he was not related), are fundamentally different from the victim in the current case (Lutes' six-year-old granddaughter).
The circuit court admitted the evidence of Lutes' prior convictions pursuant to Article I, § 18(c) of the Missouri Constitution, which provides that,
in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.
Lutes contends that the circuit court abused its discretion in admitting his prior convictions because those convictions were not legally relevant, meaning that "the probative value of the evidence [was] substantially outweighed by the danger of unfair prejudice." The legal relevance standard established by the final sentence of Article I, § 18(c) imposes a meaningful limitation on the admission of evidence of a defendant's prior sexual offenses. In its recent decision in State v. Williams , No. SC96478, 548 S.W.3d 275, 2018 WL 2016084 (Mo. banc May 1, 2018), the Missouri Supreme Court held that Article I, § 18(c) does not facially violate due process principles. In reaching that conclusion, the Court "relie[d] heavily on the protections provided" by the legal relevance standard contained in the final sentence of the amendment, id. at 284, 2018 WL 2016084 at *6 ; the Court observed that " 'the protections provided [by the legal relevance standard] effectively mitigate the danger of unfair prejudice resulting from the admission of propensity evidence in sexual-assault cases.' " Id. at 285, 2018 WL 2016084 at *7 (citation omitted). The Court expressly overruled prior Court of Appeals decisions which had suggested that a circuit court had the discretion to admit evidence of prior sexual offenses even if that evidence failed the legal relevance standard; to the contrary, the Court held that exclusion is "mandatory" where the proffered evidence is not legally relevant. Id. at 285 n.11, 2018 WL 2016084 at *7 n.11. The Court emphasized that it "is essential that the evidence meet the balancing test for legal relevance set forth in the second sentence of the amendment." Id. at 288, 2018 WL 2016084 at *9.
In assessing whether evidence is legally relevant under Article I, § 18(c), the trial court must consider the temporal remoteness of the prior offenses, and the factual similarity between the prior crimes and the charged offense. In Williams , the Supreme Court explained that,
To be probative (i.e., logically relevant), the evidence of the prior criminal act must tend to show the defendant actually had a propensity to commit the charged crime at the time it is alleged to have occurred. This is the source of the circuit court's concern with the similarity between the prior criminal act and the charged crime and with the amount of time between the two. Indeed, the two considerations are inversely related. For example, an inference of propensity might be proper notwithstanding a significant *400 time lapse between the prior crime and the charged crime if the two crimes are highly similar. On the other hand, an inference of propensity might not be proper if the prior crime and the charged crime are only somewhat similar unless the two occurred over a short span of time.
Id. at 289, 2018 WL 2016084 at *10 (citations omitted). In Williams , in the prior offense the defendant inserted his thumb into the vagina of a twelve-year-old girl, while in the charged offense, the defendant was accused of molesting the female victim when she was eight-to-thirteen years old, by touching the victim's genitals with his hand, among other sexual acts. Id. at 278-79, 291 n.15, 2018 WL 2016084 at *1, *12 n.15. The defendant in Williams began committing the charged acts within five years of being released from prison in connection with the earlier offense. Id. at 278-79, 2018 WL 2016084 at *1. The Supreme Court held that, in these circumstances, "the circuit court properly noted the prior crime and the charged crime were: (1) highly similar, given both involved Williams touching a young girl's vagina; and (2) close in time." Id. at 289, 2018 WL 2016084 at *10.
The Supreme Court also emphasized the importance of temporal proximity, and similarity of offenses, in its other decision applying Article I, § 18(c) : State v. Prince , 534 S.W.3d 813 (Mo. banc 2017). In Prince , a defendant was prosecuted for forcible sodomy for performing sexual acts on an infant child. Id. at 816-17. At his trial, the circuit court applied Article I, § 18(c), and admitted records of Prince's nine-year-old conviction for engaging in hand-to-genital contact with his six-year-old niece. Id. at 816. On appeal following his conviction, Prince argued that the evidence of his prior conviction should have been excluded as irrelevant, both because it was remote in time, but also because the acts involved in the prior conviction were too dissimilar to the current charge. Id. at 819.
The Supreme Court turned to cases from other jurisdictions to explain the proper interpretation of Article I, § 18(c).
In other jurisdictions wherein the admission of prior adjudications of sexual offenses against minors is admissible to demonstrate propensity evidence in sexual offense cases, there is guidance regarding admission of prior conduct. "Remoteness is not subject to a rigid rule, but will depend on the facts of the case." "Remoteness and similarity must be considered together because the two concepts are so closely related." Remoteness in time may render evidence inadmissible when the prejudicial effect outweighs the probative value.
Other jurisdictions make clear that when the conduct in question is similar, a nine-year gap in time is not too remote to preclude admissibility.
Prior acts of child molestation are relevant when the acts were "committed in a manner similar to the charged offense." "It is well established that the victim and the conduct at issue need only be similar-not identical-to sustain the admission of uncharged misconduct evidence."
534 S.W.3d at 820 (citations omitted).
The Supreme Court found the prior and current offenses to be sufficiently similar in Prince because, although "Victim was not related biologically to Prince, ... he referred to her as his daughter," and the victim of Prince's prior misconduct was his niece. Id. at 819. The Court observed that "Prince's actions in both cases were against young females," and that he "had access to his victims due to their close family-like relationship with him." Id.
*401 Prince cited a number of out-of-state cases in analyzing the level of temporal proximity, and factual similarity, necessary to support the admission of evidence of prior sexual offenses; it stated that these cases provided "guidance regarding admission of prior conduct." Id. at 820. In one of those cited cases, Fisher v. State , 641 N.E.2d 105 (Ind. App. 1994), the court reversed a criminal conviction based on the admission of evidence of the defendant's commission of a separate uncharged sexual offense twenty-three years earlier. Although "the victims [of both the charged and uncharged offenses] were roughly the same age, both victims were molested in a family home and in [the defendant's] truck, and the victims were both related to [the defendant]," the court found that these circumstances were "simply common characteristics of most child molestations, [which] do not warrant admission of the uncharged prior misconduct." Id. at 110. Notably, the charged offense in Fisher involved the defendant touching the victim's vagina with his hand, while in the older incident-which the court found to be too dissimilar to be admissible-the defendant's molestation of the victim advanced to sexual intercourse. Id. at 107. Lutes' charged and uncharged offenses in this case are substantially similar to the charged and uncharged offenses in Fisher ; if the offenses were too dissimilar to support admissibility in Fisher , the same conclusion should apply with full force in this case. If anything, the argument for exclusion of evidence in Lutes' case is stronger than in Fisher , because in this case, the earlier and present victims were not both Lutes' family members; the earlier and present offenses did not occur in similar locations; and the current and former victims were not "roughly the same age."
Prince also cites a number of cases in which the admission of prior-offense evidence was affirmed. In those cases, the courts found similarities in the nature of the defendant's sexual conduct, and similarities in the age and circumstances of the victims, which are absent here. For example, in State v. Acosta , 326 Conn. 405, 164 A.3d 672 (2017), the Connecticut Supreme Court emphasized that, before admitting evidence of prior sexual offenses, the trial court must conduct "a fact intensive inquiry" to determine whether the "evidence is relevant to the charged crime in that it is not too remote in time, is similar to the offense charged and is committed upon persons similar to the prosecuting witness." Id. at 676. The Court found the prior sexual offense sufficiently similar based on similarities in the offending actions, and in the victims, which are absent here:
In the present case, the charged and uncharged misconduct are sufficiently similar. In the initial stages of both incidents, the defendant placed the victim's hand on his penis.... [A]lthough the defendant's misconduct toward A escalated to vaginal penetration, and his misconduct toward J culminated in inappropriate contact[,] the distinction is unpersuasive. Indeed, because J rebuffed the defendant and threatened to report his actions[,] the jury reasonably could have inferred that he stopped only because she rebuffed his sexual advances. Therefore, the similar conduct in the charged and uncharged incidents supports the relevancy of the uncharged misconduct evidence.
The victims were sufficiently similar to render the 1997 misconduct relevant.... In the present case, both victims were prepubescent at the time of the misconduct. Furthermore, both were nieces of the defendant. The familial relationships offered the defendant access to the victims and the opportunity for his actions.
*402 Id. at 678-79 (citations and footnotes omitted).
In another case cited and followed by the Missouri Supreme Court in both Williams and Prince , the United States Court of Appeals for the Ninth Circuit upheld the admission of evidence of prior sexual offenses where the earlier offenses "were very similar to the charged crimes," in that "[e]ach case involved forced oral copulation," and "[i]n each case the victims were young relatives of LeMay, and each instance occurred while LeMay was babysitting them." United States v. LeMay , 260 F.3d 1018, 1028 (9th Cir. 2001).
The other cases cited in Prince all employ a similar analysis: they find prior sexual offenses sufficiently similar to justify their admission only after considering whether the prior acts were of a similar nature to the charged offense, and whether the circumstances of the prior victims (including the victims' ages, and the victims' relationships to the defendant) were similar to the victim of the charged offense.[2]
*403 The only post- Prince Missouri Court of Appeals decision applying Article I, § 18(c) is similar: it finds evidence of prior sexual misconduct to be legally relevant only after examining the multiple, specific factual similarities between the past and present offenses, and between the past and present victims.[3]
The admission of evidence of prior sexual misconduct is justified in part on the theory that " 'when human conduct involves sexual misconduct, people tend to act in generally consistent patterns of behavior....' " Acosta , 164 A.3d at 676 (quoting State v. DeJesus , 288 Conn. 418, 953 A.2d 45, 77 (2008) ). For this reason, the courts upholding the admission of evidence of prior sexual misconduct have focused on the particular circumstances of the charged and uncharged offenses which support the existence of such a "generally consistent pattern[ ] of behavior": the age of the victims; the defendant's familial or quasi-familial relationship to the victims, and the manner in which he gained access to them; the manner in which the defendant "groomed" his victims before initiating sexual contact; the physical location in which the sexual misconduct occurred; the circumstances and tactics which allowed the defendant to be alone with the victim in a secluded location; the specific nature of the sexual conduct, including the manner in which that conduct was initiated, and the manner in which it escalated; and the violence, threats, or inducements the defendant employed to perpetrate the sexual offense, and to keep the victim from reporting the offense.
Prince states that "[p]rior acts of child molestation are relevant when the acts were 'committed in a manner similar to the charged offense.' " 534 S.W.3d at 820 (citations omitted). So in this case, what are the similarities in the manner in which the various offenses were committed? I can find none. None of the circumstances cited in Williams , Prince , or other cases on which they rely, are present in this case. Lutes' prior convictions involved conduct which occurred twelve or more years prior to the charged offenses. Given the remoteness in time from the charged offenses, a relatively high degree of similarity between the charged and uncharged offenses should have been required before evidence of Lutes' prior convictions was admitted.[4] Here, that similarity simply does not exist. The State charged Lutes with inserting his finger into the vagina of his six-year-old granddaughter, and with *404 directing his granddaughter to hold and stroke his penis with her hand. Each of Lutes' prior convictions involved sexual intercourse with fourteen- to sixteen-year-old females. The nature of the actions in the earlier and present cases are completely different. The nature of the victims are also dissimilar. The present case involves Lutes' six-year-old granddaughter, with whom he was staying at the time of the charged offenses. The earlier cases involve fourteen- to sixteen-year-old females to whom Lutes was apparently not related, and with whom he was not residing. The fact that the charged offenses involve a prepubescent child to whom Lutes is related, while the earlier offenses involved unrelated teenagers, is a significant distinguishing feature between the earlier cases and the present one.[5]
The most that can be said in this case is that both the charged and prior offenses were felony sexual offenses committed against minor females. Under the caselaw discussed above, this is not enough to support the admission of evidence of Lutes' prior offenses; in none of the earlier cases was the relationship between the charged and uncharged offenses as attenuated as here. Because of the remoteness in time of Lutes' prior convictions, and the dissimilarity of those offenses to the present charges, the evidence of Lutes' prior offenses had minimal-if any-probative value for proving that Lutes had a propensity to commit the sort of offenses he is alleged to have committed against his granddaughter. In these circumstances, the circuit court abused its discretion in admitting evidence of those prior crimes.
The admission of evidence of those prior offenses merits reversal for a new trial. " 'If evidence of a prior crime is not admissible under any exceptions to the general rule prohibiting its admission, the admission is presumed to be prejudicial.' " State v. Johnson , 161 S.W.3d 920, 928 (Mo. App. S.D. 2005). In this case, although the State limited the evidence admitted to only that evidence revealed by the charging instruments and judgments in Lutes' prior prosecutions, the essence of the charges-that Lutes had sexual intercourse with multiple fourteen- to sixteen-year-old females at a time when he was between twenty-eight and thirty-seven years old-would inherently prejudice Lutes' defense. In addition, the State emphasized the evidence in closing argument, arguing that
[the victim's] account is not the entirety of the case against Mr. Lutes.... There's been evidence produced that Terry Lutes has the propensity to commit sex crimes against female minors. He did it in 1993, convicted in 1994, in Macon County, Missouri, 14-year-old girl; a year later, convicted again, a 14-year-old girl, in Linn County, Missouri; and then committed again in 2001, convicted in 2004, Clay County, Missouri, from a case out of Ray County. Now, this time the victim is his granddaughter.
The State argued that, "[w]e know, based on prior convictions, what Mr. Lutes is into." In these circumstances, and given the minimal legitimate probative value of the evidence, the erroneous admission of this highly prejudicial evidence requires that Lutes be given a new trial.
II.
Even if Lutes' prior convictions of sex offenses were properly admitted, reversal *405 for a new trial is required, because the circuit court prohibited him from asking prospective jurors during voir dire whether they could be fair and impartial, despite the fact that he was a convicted felony sex offender.
As the majority recognizes, a meaningful opportunity to examine potential jurors is an essential component of a fair trial. The Missouri Supreme Court explained in State v. Clark , 981 S.W.2d 143 (Mo. banc 1998), that
[a] defendant is entitled to a fair and impartial jury. One aspect of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors. The purpose of voir dire is to discover bias or prejudice in order to select a fair and impartial jury. ... To this end, a liberal latitude is allowed in the examination of jurors.
....
The defendant's right to an impartial jury would be meaningless without the opportunity to prove bias. Where the onus to prove bias is on the adversary seeking exclusion, the adversary must be allowed the leeway to do so. If jurors are not exposed to critical facts during voir dire, the parties lose the opportunity directly to explore potentially biased views, which all concerned have a duty to investigate thoroughly.
Id. at 146, 147 (citations and internal quotation marks omitted).
Although Clark recognized that counsel should not be permitted to "try the case on voir dire," id. at 146, the Court emphasized that, to have a meaningful opportunity to discovery jurors' biases, counsel must be permitted to disclose "critical facts" during voir dire.
[A]sking only general fairness and follow-the-law questions [during voir dire] is insufficient. If only generic questions are asked, biased jurors could respond affirmatively, personally confident that their dogmatic views are fair and impartial, while leaving the specific concern unprobed.
Voir dire requires the revelation of some portion of the facts of the case. An insufficient description of the facts jeopardizes appellant's right to an impartial jury. Therefore, some inquiry into the critical facts of the case is essential to a defendant's right to search for bias and prejudice in the jury who will determine guilt and mete out punishment. We repeat, the jury is required to know something about the case in order to allow the court and all parties to ferret out bias.
Id. at 147 (citations and internal quotation marks omitted). "[A] judicial attitude that no evidence be mentioned during voir dire is too restrictive and would leave the right to an impartial jury meaningless." State v. Ezell , 233 S.W.3d 251, 253 (Mo. App. W.D. 2007).
Voir dire examination must be allowed where the facts or circumstances about which counsel wishes to inquire could reveal "any preconceived bias among the venire" for or against any general class of persons, or for or against any general set of circumstances. State v. Oates , 12 S.W.3d 307, 312 (Mo. banc 2000) ; see also State v. Finch , 746 S.W.2d 607, 613 (Mo. App. W.D. 1988) (counsel entitled to explore whether "a juror has a bias in terms of a fixed partiality toward the evidence of a particular class of persons").
Prior cases have held that counsel is entitled to examine venire persons concerning whether they could be fair and impartial
*406 • where the case involves the murder of a child[6] ;
• where the defendant will not testify in his own defense[7] ;
• where the complaining witness claims she was raped[8] ;
• where a sexual assault victim has delayed reporting the offense[9] ; and
• where a claim of consent is made involving sexual intercourse with a 14-year-old.[10]
As the Supreme Court explained in Oates , in these types of cases, "[t]here exists a prevalent perception among society" for or against persons falling into certain classes, "regardless of any extenuating circumstances" in a particular case. 12 S.W.3d at 311. In the same vein, there is a very real danger that venire members will hold biases against persons-like Lutes-who have previously been convicted of felony sex offenses against minors, and will believe them to be guilty of any later-charged offense, without considering the evidence in the particular case. Lutes was accordingly entitled to conduct voir dire to determine whether any member of the venire panel held a "preconceived bias" against persons with prior sex-offense convictions, and I do not read the majority opinion to disagree with that general proposition.
Although not disputing that a defendant is generally entitled to conduct voir dire examination concerning his prior convictions, the majority holds that the circuit court did not abuse its discretion in refusing to permit such examination in this case, because " 'the manner of asking' the proposed voir dire question by Lutes was not factually or legally accurate." Maj. Op. at 395. I disagree.
Lutes had been convicted on three occasions of non-forcible sexual intercourse with females between the ages of fourteen and sixteen years old. Lutes' counsel's description of his prior offenses as involving "child molestation of other young women" adequately described the prior convictions for purposes of argument before the circuit court as to whether voir dire examination would be permitted. Given that Lutes' prior offenses consisted of acts of statutory rape, describing those acts as "child molestation" did not minimize the seriousness of the offenses. Moreover, although counsel's proposed voir dire question referred to the victims of Lutes' prior offenses as "young women," this could not have been misleading given that the question described Lutes' acts as consisting of "child molestation." While Lutes' proposed voir dire question may have been somewhat imprecise, it was not inaccurate, and any defects in the wording of this hypothetical question could not justify the circuit court in wholly denying Lutes the opportunity to conduct voir dire on this critical issue.
The majority also finds that Lutes' proposed question was not legally accurate, because it failed to recognize that the jury could properly consider Lutes' prior convictions as evidence of his guilt, by virtue of Article I, § 18(c) of the Missouri Constitution. I once again disagree. Lutes' proposed voir dire question did not suggest that the jury could not consider his prior convictions in determining his guilt. Instead, *407 he proposed merely to ask them whether they could remain "fair and impartial" despite the fact that Lutes had prior convictions for sexual offenses against minors. Fairly read, Lutes' question only proposed to ask prospective jurors what he was entitled to ask: whether they would fairly and impartially consider all of the evidence in the case, despite the fact that he had prior felony sex convictions.
In any event, I reject the majority's premise that the circuit court actually subjected counsel's proposed voir dire question to such careful parsing, and based its ruling on the purported wording defects the majority identifies. Trial counsel and the court discussed at length whether counsel would be permitted to ask venire members about the "propensity evidence" which would be admitted concerning Lutes' prior convictions of sexual offenses. Even before trial counsel formulated his proposed voir dire question, the court indicated that "I'm not going to let you do that probably," although it would allow counsel to ask the venire members "if they could be fair and impartial in hearing all the evidence." Nothing in the record suggests that the circuit court's restriction of voir dire was based on the specific wording of the voir dire question that Lutes' counsel hypothesized.
The court's refusal to allow Lutes to voir dire prospective jurors concerning his prior sex-offense convictions justifies a new trial. As explained above, the admission of such acts of prior misconduct created a substantial risk that the jury would convict Lutes without regard to the merits of the present charge. The State elicited the facts of Lutes' prior convictions, and argued in closing that the jury should rely on those convictions to find that Lutes had a propensity to commit offenses like those with which he was charged. Lutes should have been permitted to ask potential jurors whether they could remain fair and impartial, despite the fact that he was a convicted felony sex offender.
Conclusion
The circuit court's judgment should be reversed, and the case remanded to that court for a new trial.

On appeal from a jury-tried case, the appellate court views the facts in the light most favorable to the jury's verdict. State v. Carter , 523 S.W.3d 590, 593 n.1 (Mo. App. W.D. 2017).

We withhold the name of the minor victim in order to protect her privacy. § 595.226.1. Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2013 Cumulative Supplement.

S.A.F.E. is an acronym for Sexual Assault Forensic Exam.

Article I, section 18(c) applies to all trials on or after December 4, 2014, irrespective of when the crimes are alleged to have occurred. See State ex rel. Tipler v. Gardner , 506 S.W.3d 922, 928 (Mo. banc 2017).

" 'Evidence is logically relevant if it tends to make the existence of a material fact more or less probable.' " State v. Prince , 534 S.W.3d 813, 817 (Mo. banc 2017) (quoting State v. Anderson , 306 S.W.3d 529, 538 (Mo. banc 2010) ). Legal relevance weighs the probative value of the evidence against its various costs, such as "unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." Id. at 818.

The dissenting opinion makes the same mistake, building an argument upon cases from foreign jurisdictions that were not relied upon by the Supreme Court in State v. Prince , id. at 820, for the reasons the dissent discusses. Where the Prince court cites certain cases on the topic of "remoteness in time," the dissent relies upon those cases to discuss "similarity of offenses." Were the Supreme Court to interpret the same cases from foreign jurisdictions in the manner that the dissent does today, the Prince court could not have reached the result that it did, namely, that Prince's prior "bad act" of manual-to-genital contact with his six-year-old niece was sufficiently similar to sexually assaulting a four-month-old infant child anally with such force as to cause internal anal tearing, resulting in the infant child losing more than one-third of her blood supply-not to mention multiple bruises to the infant child's face, chest, and legs, as well as a cranial laceration. Id. at 816-17. As the Prince court noted, it is well established that the comparison of the charged conduct to the prior bad act need not be identical-only similar-to sustain the admission of the prior misconduct evidence. Id. at 820.

The dissenting opinion equates significance to the age of the rape and sexual assault minor victims as teenagers compared to the present child victim of the age of six. The Supreme Court ignored that distinction in Williams , noting only that the previous conviction involved a "minor child." State v. Williams , 548 S.W.3d 275, 278-79 (Mo. banc 2018). There is no reference to the age of the "prior conviction" minor child victim in the Williams case, suggesting that the relevant "age" is that of a "minor" child victim, that is, a victim under the age of eighteen. Similarly, in post-Prince Missouri precedent, the court in State v. Peirano , 540 S.W.3d 523, 529 (Mo. App. S.D. 2018) found "similarity" between prior misconduct of minor victims aged two years old and seventeen years old when compared to the charged offense, a minor victim aged nine and ten years old at the time of the sex crime by the defendant.

The record on appeal is unclear as to how much time Lutes was actually imprisoned as a result of his convictions. The record shows that Lutes was sentenced to five years' imprisonment for the 2001 conviction. In 1993, Lutes received a sentence of seven years' imprisonment, but was granted five years' probation for his plea of guilty to sexual assault in the first degree. In 1994, presumably in violation of his probation, Lutes was sentenced in another case for two counts of sexual assault to five years' imprisonment on each count to run concurrently but consecutive with another sentence. Although it is unclear as to exactly how much time Lutes spent imprisoned, it is reasonable to infer it was for a significant time during the relevant period.

In response to this question, the trial court responded, "I'm not going to let you ask that [question]." (Emphasis added.) Lutes's counsel made clear that this specific question was the proposed voir dire for which he wished to stand on as "his record," Tr. 91, presumably for appellate review. And in initial colloquy on this topic, when approaching the trial court about the subject of Lutes's prior convictions in voir dire , it was defense counsel who indicated, candidly, that he was "reluctant to ask the jury about [Lutes's prior convictions]," Tr. 90, and later admitted that questioning on the topic of Lutes's prior convictions would open "Pandora's box," Tr. 91.

An example (though only one such example and not an exhaustive or exclusive example) of such authorized line of questioning by Lutes's counsel in this case would be: I anticipate that the Prosecutor will present evidence during the course of this trial that in 1993, 1994, and 2004, my client pled guilty to, and was convicted of, three separate felony sex offenses, two convictions for sexual assault in the first degree and one conviction for statutory rape in the second degree, arising out of my client having sexual intercourse with a 14-year-old, a 14- or 15-year-old, and a 16-year-old, respectively. He is presently charged with felony child molestation related to conduct the State alleges occurred involving his 6-year-old granddaughter. Though in the State of Missouri for a case such as this one a jury is entitled to consider my client's prior felony sex offense convictions as demonstrating my client's propensity to commit the crime with which he is presently charged, are there any members of the venire panel that would be so impacted upon the hearing of such prior convictions that you do not believe that you would be able to fairly and impartially consider any other evidence that you will hear in this case in determining whether the State has met its burden of proving beyond a reasonable doubt that my client is guilty of the presently charged offense?

The Sixth Amendment is applicable to the states through the Fourteenth Amendment to the United States Constitution. Pointer v. Texas , 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The Missouri Constitution affords the accused the same rights under the Confrontation Clause as the United States Constitution. State v. Justus , 205 S.W.3d 872, 878 (Mo. banc 2006).

Although denominated as "sexual assault," the 1993 and 1994 convictions were essentially convictions for statutory rape, since the crime was defined at the time as involving "sexual intercourse with another person to whom [the defendant] is not married and ... who is fourteen or fifteen years old." § 566.040, RSMo 1986.

See United States v. Emmert , 825 F.3d 906, 909 (8th Cir. 2016) (in child-pornography prosecution, affirming admission of evidence of defendant's prior sexual abuse of two minor females; "Emmert's sexual abuse and child pornography victims were similar in age, and Emmert performed or possessed images depicting similar explicit acts on each victim."); United States v. Rodriguez , 581 F.3d 775, 796 (8th Cir. 2009) ("In both cases, Rodriguez approached a young woman by herself, forced her into a vehicle under threat of violence, and sexually assaulted her. Here, the government alleged Rodriguez approached Sjodin while alone in a parking lot, abducted her at knife point, forced her into a car, and sexually assaulted her before murdering her."); United States v. Meacham , 115 F.3d 1488, 1495 (10th Cir. 1997) ("the stepdaughters' testimony suggests a similar pattern of sexual abuse of female minor relatives made possible by exploitation of familial authority"); State v. George A. , 308 Conn. 274, 63 A.3d 918, 933 (2013) (despite age difference between victims of charged and uncharged offenses, affirming admission of evidence of uncharged offense because "the trial court reasonably exercised its discretion based on the fact that the record revealed that both E and the victim were females, residing in the defendant's household, whom he had directed to engage in [fetishistic sexual activity involving animal cruelty] that are so sexually unique as to constitute a virtual 'signature' of his propensity to engage therein."); State v. Most , 815 N.W.2d 560, 566 ¶ 21 (S.D. 2012) (finding sufficient similarity between uncharged and charged offenses where defendant "was always much older than his victims," did not live with any of his victims but had a paternal or grandparental relationship with them, and the defendant "gave all three victims gifts and money following the abuse; he abused all three victims in bedrooms or cars; and he abused his victims when they were about four years old to eleven years old"); State v. Antonaras , 137 Conn.App. 703, 49 A.3d 783, 794 (2012) (affirming admission of evidence of prior sexual offenses where "the defendant engaged in a similar grooming process" in both the charged and uncharged offenses; "[t]he defendant also engaged in similar initial sexual overtures" in each case; "the defendant's relationship with [the current victim] closely resembled his relationships with" prior victims; and "[a]ll three boys were similar in age when they first met the defendant"); State v. Armstrong , 793 N.W.2d 6, 13 ¶ 18 (S.D. 2010) ("Because Armstrong's victims were similar ages when the offenses occurred, the requisite degree of similarity existed in this case."); State v. McGuire , 135 Idaho 535, 20 P.3d 719, 723 (Idaho App. 2001) ("Each of McGuire's victims testified about foot rubbing sessions, and three of the four indicated that this conduct had escalated into sexual abuse. Three of the four victims testified that McGuire kissed them on the neck during these encounters and manually fondled and touched them in the vaginal area. All of these incidents of misconduct were committed by McGuire against his own female children while living as minors in his household."); Smith v. State , 745 So.2d 284, 289-90 (Ala. Crim. App. 1998) ("With regard to the alleged dissimilarity of the offenses, the testimony established that Burnum Gilbert Smith engaged in sexual intercourse with his two natural daughters, sexual intercourse with his older stepdaughter, sodomy with his stepson, and simulated intercourse with his infant stepdaughter. These acts clearly are similar, particularly in light of the victims' age at the time of the offenses. All of the acts occurred in the Smiths' home, while the children were living with him; the children's mothers were aware of his actions; and the mothers also were present during most of the incidents.").

State v. Peirano , 540 S.W.3d 523, 528-29 (Mo. App. S.D. 2018) (noting that "Defendant targeted young females to whom he had access because of familial relationships," and that "(1) Defendant's abuse of both Sister and Victim were reported to have started around the same age, 9 years old; (2) Defendant repeatedly grabbed and fondled the chest/breasts of all three victims, and each victim described conduct consistent with Defendant grinding his penis against them; and (3) Defendant's conduct with Sister and Victim also included sexual activity involving the shower, and bizarre pseudo-medical explanations as to why he needed to touch victims' skin to help 'get warm' after oral surgery or help with his 'blood pressure' ").

The majority argues that Lutes' prior offenses are not as remote in time as they may appear, because Lutes was incarcerated "for a significant time during the relevant period." Maj. Op. at 394 n.8. As the majority acknowledges, however, "[t]he record on appeal is unclear as to how much time Lutes was actually imprisoned as a result of his [prior] convictions." Id. In fact, the only evidence in the record suggesting that Lutes served any period of imprisonment are the sentences which were imposed for his earlier convictions.

In this regard, it is noteworthy that the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (the "DSM-V") recognizes recurrent, intense sexual attraction to prepubescent children as a distinctive sexual pathology: pedophilic disorder. Id. § 302.2, at 697.

State v. Clark , 981 S.W.2d 143, 147-48 (Mo. banc 1998).

State v. Clement , 2 S.W.3d 156, 159 (Mo. App. W.D. 1999).

State v. Finch , 746 S.W.2d 607, 612-13 (Mo. App. W.D. 1988).

State v. Ezell , 233 S.W.3d 251, 253 (Mo. App. W.D. 2007).

State v. Ousley , 419 S.W.3d 65, 73-74 (Mo. banc 2013).