STATE of Missouri, Respondent,

v.

Louis CLARK, Appellant.

No. 80133.

Supreme Court of Missouri,
En Banc.

Nov. 24, 1998.

As Modified on Denial of Rehearing
Dec. 22, 1998.

Susan Kister, Office of Special Public Defender, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Catherine Chatman, Asst. Atty. Gen., Jefferson City, for respondent.

DUANE BENTON, Chief Justice.

Appellant Louis Clark was convicted of two counts of first degree murder for shooting Morris Howell and his three-year-old daughter Morrisa. On the jury's recommendation, the circuit judge imposed two death sentences. This Court has exclusive jurisdiction of the appeal. *Mo. Const. art. V, sec. 3.* Because the trial court improperly limited the scope of voir dire, we reverse and remand for a new trial.

## I.

This Court reviews the facts in the light most favorable to the verdict. *State v. Shurn,* 866 S.W.2d 447, 455 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

On the evening of September 28, 1995, Morris Howell and his three-year-old daughter, Morrisa, rode with three others to a liquor store. Morris drove the car, Chandler Lotts sat in the front seat, with Morrisa between them. Felicia Blount rode in the backseat with Keandra—Morris and Felicia's one-year-old daughter. After they parked, Lotts entered the store while the others waited in the car.

Appellant appeared and began firing shots into the driver's side of the car. Blount picked up Keandra, jumped out the passenger-side door, and ducked behind the car. Morris, screaming that appellant stop shooting because children were in the car, grabbed Morrisa and pushed her toward the passenger door. Appellant moved around the front of the car to the passenger side, continuing

to shoot into the car. Morris and Morrisa fell out the passenger door onto the ground, with Morris partially covering Morrisa. Appellant then approached, shot them twice, and fled. Morris and Morrisa died from the gunshot wounds. Appellant was arrested the next day. After several hours of interrogation, he confessed to the shooting, claiming he did not act alone.

On the morning of the first day of trial, immediately prior to voir dire, the trial court held an in camera conference to discuss preliminary matters, including a motion in limine filed by the State. In that motion, the prosecutor requested that the court prohibit defense counsel from "seeking a commitment" from potential jurors "by asking or providing to the jurors isolated circumstances involving this case. Specifically, the age of [Morrisa Howell], who was three years old at the time." The court sustained the motion. The court specifically ruled that the defendant was "not entitled to voir dire on specifics of the case being tried." Later in the pretrial conference, defense counsel requested that the judge clarify the ruling:

MR. SCHOLZ: Judge, I would like to go back to the prior ruling regarding the age of the defendant. And just to inquire.

THE COURT: Age of the victim.

MR. SCHOLZ: Excuse me, age of the victim and inquire if, Your Honor, if it goes just to death penalty qualification and not to general voir dire.

THE COURT: No, it goes to the entire scope of voir dire, entire spectrum.

Voir dire commenced. During voir dire, between examinations of the fifth and sixth venire panels, defense counsel again requested to voir dire on the age of the victim:

MR. SCHOLZ: Judge, I want to make sure that our denial of our requests to voir dire on the basis of the age of the victim, I want to make sure our observations are noted for the record.

We believe that the case law in Missouri from Bi–State vs. Littell, indicates that clearly we are allowed to go into such areas. I feel that, and it's been my experience, that jurors express very strong reservations to the stage of impossibility in

considering a case where a child has been murdered.

It has often occurred that jurors will state that they can be fair, will be fair, find out that a child is involved, and automatically pop up with, "I can't be fair in that case."

I think it's a circumstance of the case that not allowing to us voir dire on denies us due process, equal protection, effective assistance of counsel, a fair trial, effective and reliable sentencing, freedom from cruel and unusual punishment under the 5th, 6th, 8th and 14th Amendments to the United States Constitution; and under Article 1, Sections 2, 10, 18(a), 19 and 21 of the Missouri Constitution.

I do think this is an area that we would get a number of people who would not be able to serve. But I think that is better, Judge, than getting people who will serve without being able to fairly assess the fact that someone was killed was a child.

THE COURT: The record's been made. My ruling remains unchanged. You will not be permitted to voir dire on the age of the victim.

The issue was raised in the motion for new trial.

■■■ The absence of a specific question in the record does not prevent appellate review. Normally, a challenge to voir dire focuses on the question or questions that counsel was not allowed to ask. However, the failure to articulate a precise question is not fatal as long as "counsel made known to the trial court" what area he wanted to explore. *State v. Brown*, 547 S.W.2d 797, 800 (Mo. banc 1977). Here, defense counsel informed the trial court, both in the motion in limine and during voir dire, that he wanted to question the venire on "the age of the victim." The point is preserved for review.

## II.

Appellant claims the trial court improperly restricted voir dire. Because this point merits reversal, only it is addressed.

■■■ A defendant is entitled to a fair and impartial jury. *U.S. Const. amends. VI, XIV; Mo. Const. art. I, sec. 18(a)*. One

aspect of "the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222, 2230, 119 L.Ed.2d 492 (1992). The purpose of voir dire is to discover bias or prejudice in order to select a fair and impartial jury. *State v. Leisure*, 749 S.W.2d 366, 373 (Mo. banc 1988); *State v. Smith*, 649 S.W.2d 417, 428 (Mo. banc 1983). "Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Morgan*, 504 U.S. at 729–730, 112 S.Ct. 2222. To this end, "a liberal latitude is allowed in the examination of jurors." *State v. Granberry*, 484 S.W.2d 295, 299 (Mo. banc 1972).

■■■ However, due to the myriad of possible inquiries, the trial court has discretion to judge the appropriateness of specific questions. The trial judge supervises voir dire, and "the nature and extent of the questions counsel may ask are discretionary with that court." *Smith*, 649 S.W.2d at 428. Likewise, the trial judge is in the best position "to judge whether a disclosure of facts on *voir dire* sufficiently assures the defendant of an impartial jury without at the same time amounting to a prejudicial presentation of the evidence." *Leisure*, 749 S.W.2d at 373. Rulings will be reviewed for abuse of discretion. *Smith*, 649 S.W.2d at 428.

■■■ When ruling on the propriety of a particular question, the trial court must consider the question within the context of the case. *State v. Antwine*, 743 S.W.2d 51, 58 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). Most importantly, counsel may not try the case on voir dire. *Id.* For example, argument or "a presentation of the facts in explicit detail" during voir dire is inappropriate. *Antwine*, 743 S.W.2d at 58. Similarly, counsel may not attempt to elicit a commitment from jurors how they would react to hypothetical facts. *State v. Jones*, 749 S.W.2d 356, 359 (Mo. banc 1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 155 (1988). "[W]hen the inquiry includes ques-

tions phrased or framed in such manner that they require the one answering to speculate on his own reaction to such an extent that he tends to feel obligated to react in that manner, prejudice can be created. The limitation is not as to the information sought but in the manner of asking." *State v. Garrett*, 627 S.W.2d 635, 642 (Mo. banc 1982). Counsel also may not seek to predispose jurors to react a certain way to anticipated evidence. *Compare State v. Taylor*, 742 S.W.2d 625, 627 (Mo.App. E.D.1988), *with State v. Finch*, 746 S.W.2d 607, 613 (Mo.App. W.D.1988) (holding that the trial court must allow defendant to learn whether jurors are already predisposed with respect to certain evidence).

▪ Nevertheless, asking only "general fairness and follow-the-law questions" is insufficient. *State v. Nicklasson*, 967 S.W.2d 596, 611 (Mo. banc 1998), citing *Morgan, supra*; *Brown*, 547 S.W.2d at 800. If only generic questions are asked, biased jurors "could respond affirmatively, personally confident that [their] dogmatic views are fair and impartial, while leaving the specific concern unprobed." *Morgan*, 504 U.S. at 735, 112 S.Ct. 2222; *see also Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975).

▪ Voir dire requires "the revelation of some portion of the facts of the case." *Leisure*, 749 S.W.2d at 373. "An insufficient description of the facts jeopardizes appellant's right to an impartial jury." *Antwine*, 743 S.W.2d at 58. Therefore, some inquiry into the critical facts of the case is essential to a defendant's right to search for bias and prejudice in the jury who will determine guilt and mete out punishment. *Id.* at 60. "We repeat, the jury is required to know something about the case in order to allow the court and all parties to ferret out bias." *Leisure*, 749 S.W.2d at 374.

▪ The defendant's right to an impartial jury would be meaningless without the opportunity to prove bias. *Dennis v. United States*, 339 U.S. 162, 171–172, 70 S.Ct. 519, 523, 94 L.Ed. 734 (1950); *see also Morgan*, 504 U.S. at 733–734, 112 S.Ct. 2222; *Brown*, 547 S.W.2d at 799. Where the onus to prove bias is on "the adversary seeking exclusion," *Antwine*, 743 S.W.2d at 60, the adversary must be allowed the leeway to do so. If jurors are not exposed to critical facts during voir dire, the parties lose the opportunity directly to explore potentially biased views, which all concerned have a duty to investigate thoroughly. *Id.*; *cf. State v. Gary*, 822 S.W.2d 448, 451 (Mo.App. E.D. 1991); *Littell v. Bi–State Transit Dev. Agency*, 423 S.W.2d 34, 38 (Mo.App.1967).

▪ Every fact need not be disclosed to prospective jurors. Only those critical facts—facts with substantial potential for disqualifying bias—must be divulged to the venire. In the present case, the trial court completely precluded defense counsel from questioning prospective jurors on the "specifics of the case being tried," in particular that one victim was only three years old. A case involving a child victim can implicate personal bias and disqualify prospective jurors. *State v. Wacaser*, 794 S.W.2d 190 (Mo. banc 1990); *cf. Littell*, 423 S.W.2d at 37 ("[I]n civil cases it is proper to probe the minds of prospective jurors to discover prejudice because of sympathy for a child."). The trial court must strike for cause prospective jurors when they exhibit prejudicial bias because the victim is a child. *Wacaser*, 794 S.W.2d at 191–193. Due to the sweeping nature of the trial court ruling in this case, the defense could not attempt to discover that bias. Because this does not satisfy the defendant's right to an impartial jury, the ruling constitutes an abuse of discretion.

▪ To be entitled to relief, appellant must suffer a "real probability of injury." *State v. Betts*, 646 S.W.2d 94, 98 (Mo. banc 1983). Here, the prosecutor emphasized the fact that a child victim was involved. For instance, in his guilt-phase opening statement alone, the prosecutor repeated Morrisa's age three times and called her a "baby" eight times. This was the first time the jury learned one victim was a child. The prosecutor concluded his guilt-phase closing argument with the remark: "That's the man we're dealing with here, that's what we got here, that's who's sitting right here. A guy can walk up to a baby and put a bullet into her head. And don't forget that, please."

The record also reflects that one juror left the room crying after viewing autopsy photos of Morrisa. Even one partial juror constitutes a real probability of injury. *Morgan,* 504 U.S. at 729, 734 n. 8, 112 S.Ct. 2222.

The state claims that appellant's request is merely an attempt to elicit the jurors' emotions and feelings concerning child victims, contrary to *State v. Kreutzer,* 928 S.W.2d 854 (Mo. banc 1996). In *Kreutzer,* a trial court restriction of voir dire was not plain error, because "queries, touching upon a prospective juror's expectations or feelings, were irrelevant and properly excluded." *Id.* at 865. However, in this case, the trial court's ruling encompasses more than questions about feelings. At a minimum, appellant had the right to inquire about potential bias due to the critical facts of the case, and the trial court erred in refusing that right.

The state also invokes *State v. Nicklasson,* 967 S.W.2d 596 (Mo. banc 1998). The appellant there asserted several voir dire claims. This Court reviewed separately the challenges to general voir dire and the challenge to death qualification. *Id.* at 608–612. Nicklasson attacked the death qualification portion of voir dire because it was conducted solely by the trial court. *Id.* at 609–611. However, this Court held that the death qualification was adequate because it "satisfied the sufficiency-of-inquiry requirements imposed by *Witherspoon–Witt–Morgan.*" *Id.*

▮ *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and its progeny do not limit general voir dire, nor do they dictate the level of inquiry required to validate the defendant's right to a fair and impartial jury. *See* [*Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841] Those cases address death qualification. Death qualification is only one part of voir dire in capital cases. The primary purpose of death qualification is to ascertain whether prospective jurors have such strong views about the death penalty that they cannot be impartial in sentencing. *Morgan,* 504 U.S. at 728–729, 112 S.Ct. 2222. In addition, as to guilt and innocence, the defense must have the opportunity to identify veniremembers whose views on the death sentence will interfere with their verdict in the guilt phase. *Lockhart,* 476 U.S. at 170 n. 7, 106 S.Ct.

1758; *Witherspoon,* 391 U.S. at 522–523 n. 21, 88 S.Ct. 1770.

▮ Death qualification is an additional requirement that does not preempt general voir dire and the right to an impartial jury in the guilt phase. *See Lockhart v. McCree,* 476 U.S. 162, 177, 106 S.Ct. 1758, 1767, 90 L.Ed.2d 137 (1986). Any veniremember who cannot be impartial is unfit to serve, whether the partiality is due to an aversion to the death penalty, an excessive zeal for death, or any other improper predisposition. Both the United States Supreme Court and Missouri courts have reversed convictions where general voir dire was unduly restricted. *E.g., Morford v. United States,* 339 U.S. 258, 70 S.Ct. 586, 94 L.Ed. 815 (1950); *Brown,* 547 S.W.2d at 805; *Finch,* 746 S.W.2d at 613; *State v. Hoelscher,* 217 Mo.App. 156, 273 S.W. 1100 (Mo.App.1925). The appellant in *Nicklasson* also claimed that general voir dire was unduly restricted, but he did not allege any critical facts that the trial court excluded from voir dire. *Nicklasson,* 967 S.W.2d at 608–609. *Nicklasson* is irrelevant to this case.

Because the trial court barred all inquiry into a critical fact during voir dire, the judgment must be reversed.

### III.

The judgment is reversed, and the cause remanded for a new trial.

All concur.