

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE CARE AND TREATMENT OF D.N. | ) ) ) ) ) ) ) ) ) ) ) | No. ED105998 <br><br> Appeal from the Circuit Court of Clark County <br> 16CK-PR00032 <br><br> Honorable Rickey R. Roberts <br><br> Filed: July 9, 2019 |

### OPINION

This civil commitment case was brought by the State in July 2016 against Appellant D.N. as he was completing a 15-year prison sentence for his conviction on the unclassified felony of sexual abuse. The State's petition filed pursuant to § 632.486[1] sought to have Appellant committed to the custody of the Department of Mental Health ("DMH") as a sexually violent predator ("SVP"), as defined by § 632.480, in light of the evidence that Appellant had committed sexual offenses against his mentally disabled 39-year-old sister-in-law; his eight-year-old son; his four-year-old stepson; and an unrelated adult woman. The jury found Appellant to be an SVP and the trial court entered judgment on the verdict committing him to the DMH.

Appellant now asserts that the trial court abused its discretion during *voir dire* by prohibiting his counsel from informing the venire panel of the ages of the two children he had

---

[1] All statutory references are to RSMo 2016.

abused and from inquiring of the venire panel about potential bias or prejudice stemming from those facts. Because the trial court prevented Appellant in this regard from exercising his "right to inquire about potential bias due to the critical facts of the case," *State v. Clark*, 981 S.W.2d 143, 148 (Mo.banc 1998)—and because Appellant was prejudiced by that denial—we find the court abused its discretion requiring reversal and remand for a new trial.

## Background

Appellant was convicted in 2005 of felony sex abuse of his mentally disabled sister-in-law for which he was sentenced to 15 years in prison. He was scheduled to be released in August 2016. Approximately two months prior to that scheduled release date, a Department of Corrections psychologist evaluated Appellant and found that he met § 632.480's definition of a "sexually violent predator." On that basis, the State filed its July 2016 petition seeking to commit Appellant to civil confinement as an SVP. Following a September 7, 2016 hearing held pursuant to § 632.489, the court found that probable cause existed to support the allegations in the petition so the court transferred Appellant to the custody of the DMH for further evaluation on the question of whether he met the statutory definition of an SVP.

As a result, DMH psychologist Dr. Jeffrey Kline examined Appellant and issued his SVP evaluation report on December 5, 2016 finding that Appellant was *not* an SVP. Dr. Kline determined that Appellant did not suffer from a mental abnormality as defined by § 632.480 and was unlikely to engage in predatory acts of sexual violence if released into the community. In response, the State requested and was permitted to have Appellant examined by Dr. Harry Goldberg, a clinical psychologist, who also served as the State's expert at trial. Dr. Goldberg concluded that Appellant satisfied the definition of an SVP.

2

Trial was set for June 2017 pursuant to § 632.492. During *voir dire*, Appellant's counsel attempted to inform the venire panel of the specific ages of his child victims. The State objected on the basis that the ages of the victims were facts too inflammatory for the panel to hear. The court sustained the State's objection. Instead, Appellant's counsel was limited to asking, without providing any specific detail about his victims, whether any venire member was "worried that because of having kids or grandkids that are small" they might have trouble following the court's instructions. Several venire members, none of whom was subsequently seated on the jury, admitted that they would have difficulty being fair and impartial for that reason.

But counsel was not allowed to inform the panel of the ages of any of Appellant's victims or to divulge less specifically that the case would involve evidence that his victims included a preschool-aged child. As a result, the jury was selected without having been *voir dired* in light of those facts.

Then trial began and the State, from its opening statement onward, repeatedly highlighted the extent to which its SVP case rested on the facts that Appellant sexually abused his stepson beginning when he was four years old, and his own son beginning when he was eight years old. The State's expert, Dr. Goldberg, testified that he diagnosed Appellant with three disorders, including *pedophilic disorder* (sexual attraction to prepubescent children), all of which "worked together" to meet the definition of a mental abnormality under § 632.480(2)—and that the diagnosis of pedophilic disorder was based on two particular facts: (1) Appellant's son "said he was *eight years old* when [Appellant's sexual] molestation [of him] began," and (2) Appellant's stepson "said he was *four years old* when [Appellant's sexual] molestation [of him] began." (Emphasis added). The State kept the focus on the particular ages of Appellant's victims throughout the case and into its closing argument.

3

The jury found Appellant to be an SVP and the circuit court entered its judgment adopting the jury's verdict and ordered Appellant committed to the DMH for care, control, and treatment.

This appeal follows.

## Discussion

1. *The purpose of* voir dire *is to select a fair and impartial jury.*

Litigants have a constitutional right to trial by a fair and impartial jury of twelve qualified jurors. *Matter of Care and Treatment of Braddy*, 559 S.W.3d 905, 914 (Mo.banc 2018) (citing Mo. CONST. art. I, § 22(a); § 494.470). Critical to the guarantee of the right to an impartial jury is an adequate *voir dire* to identify unqualified jurors. *State v. Clark*, 981 S.W.2d 143, 146 (Mo.banc 1998) (citing *Morgan v. Illinois*, 504 U.S. 719, 729 (1992)). The purpose of *voir dire* is to discover bias or prejudice in order to select a fair and impartial jury. *Id.* (citing *State v. Leisure*, 749 S.W.2d 366, 373 (Mo.banc 1988); *State v. Smith*, 649 S.W.2d 417, 428 (Mo.banc 1983)). Without an adequate *voir dire*, the trial judge's responsibility to remove prospective jurors who will not be able to impartially follow the court's instructions and evaluate the evidence cannot be fulfilled. *Id.* (citing *Morgan*, 504 U.S. at 729–730).

To this end, a liberal latitude is allowed in the examination of jurors. *Id.* (citing *State v. Granberry*, 484 S.W.2d 295, 299 (Mo.banc 1972)). Of course, the trial court has discretion to judge the appropriateness of specific questions—the trial judge supervises *voir dire*, and the nature and extent of the questions counsel may ask are discretionary with that court. *Id.* (citing *Smith*, 649 S.W.2d at 428). But the trial court may not abuse its discretion in deciding how much disclosure of facts in *voir dire* is necessary to permit the parties to secure an impartial jury. *Id.* And importantly, "critical facts" with "substantial potential for [revealing a] disqualifying bias"

4

simply *"must be divulged* to the venire" lest the court's ruling constitute an abuse of discretion. *Id.* at 147 (emphasis added).

That is because if jurors are not exposed to these critical facts during *voir dire,* "the parties lose the opportunity directly to explore potentially biased views, which all concerned have a duty to investigate thoroughly." *Id.* (citing *State v. Antwine,* 743 S.W.2d 51, 60 (Mo.banc 1987), *cert. denied,* 486 U.S. 1017 (1988)). As the Missouri Supreme Court has declared, the right to an impartial jury "would be meaningless without the opportunity to prove bias." *Id.* (citing *Dennis v. United States,* 339 U.S. 162, 171–172 (1950); *Morgan,* 504 U.S. at 733–734; *State v. Brown,* 547 S.W.2d 797, 799 (Mo.banc 1977)). Therefore, "where the onus to prove bias is on the adversary seeking exclusion [of potentially biased venire members], the adversary *must* be allowed the leeway to do so." *Id.* (quoting *Antwine,* 743 S.W.2d at 60) (internal quotation marks omitted) (emphasis added).

2. *The trial court abused its discretion by preventing Appellant's counsel from revealing the ages of Appellant's juvenile victims and from inquiring of the panel during* voir *dire as to any bias or prejudice due to the tender ages—eight and four years old—of those victims.*

Here, we find that the trial court abused its discretion in this regard. The ages of Appellant's victims were critical facts here because they were directly relevant to answering the central question in the case: whether Appellant is an SVP under § 632.480(5). The statute defines an SVP as "any person who suffers from a *mental abnormality* which makes the person *more likely than not* to engage in predatory acts of sexual violence if not confined in a secure facility." *In re Berg,* 342 S.W.3d 374, 381 (Mo.App.S.D. 2011) (quoting § 632.480(5)) (emphasis added).[2]

---

[2] Less relevant here, to be designated an SVP under § 632.480(5), a person also has to have "ple[aded] guilty or been found guilty in this state or any other jurisdiction, or been found not guilty by reason of mental disease or defect pursuant to section 552.030, of a sexually violent offense; or . . . been committed as a criminal sexual psychopath pursuant to section 632.475 and statutes in effect before August 13, 1980."

Section 632.480(2) defines such "mental abnormality" as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses *in a degree constituting such person a menace to the health and safety of others.*" *Id.* (quoting § 632.480(2)) (emphasis added).

The jury was asked to determine whether Appellant's pedophilic disorder diagnosis, considered together with his other mental disorders, means he suffers from a "mental abnormality which makes [him] *more likely than not* to engage in predatory acts of sexual violence if not confined in a secure facility." § 632.480(5) (emphasis added). To reach that decision, the jury needed to understand and weigh the *severity* of Appellant's pedophilic disorder and the *likelihood* of his future dangerousness—not merely the fact of his diagnosis and the bare possibility that he might again cause harm.

In that regard, the ages of Appellant's victims were critical facts for determining whether Appellant is an SVP under § 632.480(5). Where a person has been diagnosed with pedophilic disorder, common sense suggests that a juror will be more likely to find the person to be an SVP the younger the age of their victims, especially if the person has sexually molested an infant or a prekindergarten child. Preschool children generally are more vulnerable than preteens or teenagers and the sexual abuse of a preschool child may signal a more severe mental disturbance.

Likewise, the scourge of child sex abuse evokes strong emotional reactions in our society. It would certainly not have been surprising that the revelation that one of Appellant's victims was a preschooler would elicit disqualifying-bias testimony from one or more of the panel. And given the wide latitude litigants are afforded in *voir dire* particularly regarding critical-fact issues, *Clark*, 981 S.W.2d at 146 (citing *Granberry*, 484 S.W.2d at 299), we find the trial court erred by prohibiting Appellant's counsel from probing the venire panel for such bias and prejudice.

6

In *Clark*, 981 S.W.2d at 145-48, where the victim of a shooting was only three years old, the Missouri Supreme Court held that the trial court abused its discretion by prohibiting counsel from informing the venire panel during *voir dire* of "the age of the victim" because "[a] case involving a child victim can implicate personal bias and disqualify potential jurors." *See also Littell v. Bi-State Transit Dev. Agency*, 423 S.W.2d 34, 37 (Mo.App. 1967) ("[I]n civil cases it is proper to probe the minds of prospective jurors to discover prejudice because of sympathy for a child.").

Indeed, such disqualifying bias is perhaps to be expected on the part of some potential jurors when a case involves the *sexual abuse* of a preschooler. For it would not be shocking or extraordinary for a potential juror to assert that *any risk* of future sexual molestation by a person alleged to be an SVP of children of such a vulnerable age would be *too great* for that venire member fairly to consider the evidence and not just to wager instead that it would be safer to trust the State's SVP allegations *regardless* of whether the State met its burden of proof.

Based on all these considerations, we find the trial court—to ensure that potential jurors would be free from disqualifying bias in evaluating the *severity* of Appellant's mental abnormality and the *probability* of his future dangerousness—should have allowed Appellant's counsel to inform the venire panel of the ages of Appellant's victims and to inquire of the panel regarding those facts. The victims' ages were "critical facts" of the case "with substantial potential for disqualifying bias"—the exact kind of information *Clark* held "*must be divulged* to the venire." 981 S.W.2d at 147 (emphasis added). And therefore, the consequence of the trial court's decision to exclude those facts from *voir dire* was to deny Appellant his constitutional right to a fair and impartial jury. *See id.* (holding that keeping out a "critical fact" in *voir dire* "does not satisfy the defendant's right to an impartial jury").

7

3. *Appellant was prejudiced by the trial court's ruling.*

We now turn to the second part of our analysis—whether Appellant was prejudiced. To be entitled to relief here, Appellant must demonstrate that as a result of the court's error, he suffered a "real probability of injury." *Id.* (citing *State v. Betts*, 646 S.W.2d 94, 98 (Mo.banc 1983)); *see also Joy v. Morrison*, 254 S.W.3d 885, 888 (Mo.banc 2008) (recognizing such prejudice must be shown also in civil cases where it is asserted the trial court erred by unduly limiting *voir dire*). We find on the record before us that the prejudice Appellant suffered as a result of the court's error was acutely illustrated by the central role that the tender ages of Appellant's two child victims occupied in the State's case.

In *Clark*, the Missouri Supreme Court noted that prejudice was demonstrated by the fact that "the prosecutor emphasized that a child victim was involved." 981 S.W.2d at 147. More specifically, "the prosecutor repeated [the minor victim's] age three times and called her a 'baby' eight times." *Id.* He also described the defendant during closing argument as "[a] guy [who] can walk up to a baby and put a bullet in her head." *Id.*

Similarly, here, the State emphasized the ages of two of Appellant's victims from its opening statement through its closing argument. At the outset of its opening statement, the State went straight to the well and asserted that Appellant had "indecent contact with his eight-year-old biological son," and that he "sodomized his stepson for several years beginning when he was as young as four years old." The State also repeatedly referenced the specific tender ages of those two victims during its case-in-chief. And during closing argument, the State contended that Appellant suffers from a mental abnormality under § 632.480(2) based in considerable part on Appellant's sexual abuse of "an eight-year-old and a four-year-old."

8

We do not fault the State for its strategic focus. The State well understood that the ages of Appellant's victims were *critical facts* in this case—critical not only because their ages were central to the State's expert's diagnosis of Appellant having "pedophilic disorder," but also from the crucial standpoint of persuading the jury that this individual needed to be committed because otherwise he was likely to offend again.

But facts that are so critical during the trial of the case are also likely to present proper areas of *voir dire* inquiry; indeed, as the Missouri Supreme Court recognized in *Clark*, "voir dire *requires* the revelation of some portion of the facts of the case." *Id.* (citing *Leisure*, 749 S.W.2d at 373) (emphasis added). And under *Clark*, "[a]t a *minimum*, [parties] ha[ve] *the right to inquire* about potential bias due to the critical facts of the case, and the trial court err[s] in refusing that right." *Id.* at 148 (emphasis added).

4. *The State's arguments are unpersuasive because they ignore that the ages of Appellant's victims were critical facts in this case.*

The State first contends that no error occurred here because Appellant's counsel was permitted to question the venire panel "on the critical fact of [Appellant's] victimization of children." We disagree. While the panel learned that "children" were among Appellant's victims, they did not hear the specific ages. Moreover, the extent of the inquiry allowed was whether any member of the venire panel was "worried that because of having kids or grandkids that are small" they might have trouble following the court's instructions. This was not adequate *voir dire* on the critical issues in the case. *See id.* at 147.

The State's second argument is based on *Care and Treatment of Wolfe v. State*, 291 S.W.3d 829, 833 (Mo.App.W.D. 2009), which the State asserts to hold that a venire panel *never* needs to hear about the ages of the victims of an alleged SVP. We disagree with the State's reading of *Wolfe*. The court there found that where counsel for the alleged SVP would have divulged to the

9

venire panel not only the ages of the victims but also "the injuries sustained, the circumstances of the abuse, and the relationship of the victims to [him]," the trial court "expressed a reasonable concern that such detail would cross the line into argument and effectively submit the case to the jury in *voir dire*, before any evidence was heard." *Id.* And counsel in *Wolfe* never made a limited request like the one here to inform the venire panel solely of the ages of victims. *Id.* at 831-33.

Rather, counsel in *Wolfe* made an offer of proof that he would have provided the venire with detailed accounts of his client's prior offenses; for example, he would have stated that "[in] 1978, Mr. Wolfe sexually assaulted his five-year-old niece. Injuries included vaginal tears and scratching. No charges were filed by the family. . . . Wolfe went to the Fulton Mental State Hospital instead." *Id.* at 832. The trial court found this objectionable and the *Wolfe* court held it was proper to prohibit counsel from stating these facts because counsel was attempting to introduce so much detail as to effectively "try the case during jury selection." *Id.* at 832-33. Indeed, the *Wolfe* holding rested firmly on the longstanding principle that "[s]oliciting responses on the specific facts or circumstances of a case is improper when it appears *calculated to predispose jurors to react to anticipated evidence in a particular way or to commit to a certain outcome.*" *Id.* at 833 (citing *Clark*, 981 S.W.2d at 146-47) (emphasis added).

Here, by contrast, there is no indication that Appellant's counsel sought an advance commitment from potential jurors. Appellant's counsel did not attempt to inform the jury of the details of Appellant's specific conduct during the offenses, the victims' injuries, or any other circumstances of the sexual abuse. So Appellant's counsel did not impermissibly attempt to try the case during *voir dire*.

Moreover, as the Missouri Supreme Court asserted in *Clark*, *voir dire* inquiry into the critical facts of the case is "essential" to a party's right to search for bias and prejudice in the jury

10

tasked with deciding the case. 981 S.W.2d at 147. Our Supreme Court placed special emphasis on this statement of law: "We repeat, the jury is required to know something about the case in order to allow the court and all parties to ferret out bias." *Id.* (citing *Leisure*, 749 S.W.2d at 374). Applied here, we believe this statement of law and the Court's specific holding in *Clark* that "facts with substantial potential for disqualifying bias" must be divulged, dictates that Appellant's counsel was entitled to inform the venire panel of the ages of Appellant's victims. *Id.* at 146-47.

## Conclusion

For the reasons stated above, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.[3]

James M. Dowd, Judge

Sherri B. Sullivan, P.J., and
Robin Ransom, J., concur.

---

[3] Given our disposition based on the trial court's improper restriction of *voir dire*, we find to be moot the other issues raised by Appellant in his points on appeal.

11