

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | **WD81843** |
| v. | ) | |
| | ) | **OPINION FILED:** |
| | ) | **May 11, 2021** |
| JUSTIN A. FIELDS, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Charles H. McKenzie, Judge**

**Before Division Two:** Mark D. Pfeiffer, Presiding Judge, and
Alok Ahuja and Karen King Mitchell, Judges

Mr. Justin A. Fields ("Fields") appeals from the judgment after jury trial of the Circuit Court of Jackson County, Missouri ("trial court"), in which Fields was convicted of attempted forcible rape. On appeal, Fields claims the trial court committed reversible error in overruling his objection to the prosecutor's questioning of the venire panel during voir dire. We affirm.

**Factual and Procedural Background**[1]

On the night of June 21, 2013, L.H.[2] and her friends attended a party. Fields attended that same party. As the party came to an end and L.H.'s friends left, L.H. asked her cousin if he could

---

[1] "On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict." *State v. Demark*, 581 S.W.3d 69, 73 n.2 (Mo. App. W.D. 2019) (internal quotation marks omitted).

[2] Pursuant to section 595.226, we do not use the victim's name in this opinion. All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented.

take her home. Her cousin agreed to give her a ride home and informed L.H. that his friend, Fields, would be riding along with them. The three of them rode together in the front seat of the small sports car that L.H.'s cousin was driving. During the ride to L.H.'s home, Fields repeatedly groped L.H. by rubbing on her thighs. L.H. asked him to stop and removed his hand multiple times.

When they arrived at L.H.'s home, L.H.'s cousin asked if he and Fields could stay awhile because they were too drunk to continue to drive. L.H. agreed to allow them to stay and told them that they could sleep on the couch. L.H. went to her bedroom and called her boyfriend, who was at work. Fields, thereafter, entered L.H.'s bedroom, to which L.H. responded by telling Fields to get out and that she was on the phone with her boyfriend. Fields did leave her room after that exchange but returned a short time later. When he returned, he closed the door behind him and, believing he had locked it, grabbed L.H. around her waist. Although L.H. told him to leave, he did not leave.

Fields pushed L.H. down on the bed and attempted to have sex with her. But L.H. resisted and tried to push Fields off of her. L.H. called out for her cousin, but Fields told her that her cousin could not hear her. Fields proceeded to kiss and lick L.H. Although she resisted his aggression, Fields responded by shoving L.H. onto her stomach. Fields then attempted to penetrate her with his penis, but L.H.'s resistance prevented him from continuing the assault.

L.H. broke free of Fields's grasp and ran to the kitchen to retrieve a knife. She then screamed for her cousin and Fields to leave her home, and told them that she was calling the police. Fields and L.H.'s cousin hurriedly left her apartment. L.H rushed to call the police while simultaneously chasing down the vehicle Fields occupied to record the license plate of the car. The police soon arrived and L.H. was taken to the hospital where she underwent physical and psychological examinations. Fields's DNA was subsequently recovered from L.H.'s body.

2

On December 16, 2016, a grand jury indicted Fields on one count of forcible rape and one count of forcible sodomy. The jury trial commenced on April 2, 2018. On voir dire the following exchange occurred:

> [Prosecutor]: I would like for you to think of a major life event, say getting married, having a baby, getting a new job and talking to people about that big life event. Do you think you would tell that story the same every single time that you talk about that major life event? Does anybody here think—
>
> [Defense Counsel]: Judge, can we approach?
>
> The Court: You may.
>
> (The following proceedings held at sidebar.)
>
> [Defense Counsel]: I don't understand how this line of questioning is going to the heart of who can be fair and impartial in this case.
>
> The Court: I overrule the objection. I understand the question as phrased. Because it's asking about an element of the credibility issue and I've heard the question before and thought it was appropriate. Overruled.

The prosecutor then followed up by asking if anyone would hold it against any of the witnesses if "they can't tell the story the exact same with the exact same detail every single time" and no one on the venire panel responded. The prosecutor then asked the venire panel whether any of them had been to a haunted house (*i.e.*, a scary event); after which she asked one of the responding venirepersons whether they could remember specific details about the experience, and defense counsel again objected:

> I don't understand where she's going with this line of questioning. She's asking someone about a haunted house and what they remember. How does that go to whether or not this person can be fair and impartial in this case and judge the credibility of witnesses?

Again, the trial court overruled the objection. The question drew mixed reactions. Some venirepersons responded that they could not remember all the specific details, but others responded that if it was a "major life event," they *would* recall those details.

At the conclusion of the jury trial, Fields was convicted on count one of the lesser-included offense of attempted forcible rape and acquitted on count two of the charge of forcible sodomy. Fields filed a motion for a new trial after the verdict in which he argued that the trial court erred in overruling his objection during voir dire. The motion was denied and, thereafter, Fields was sentenced to eighteen years' imprisonment in the Department of Corrections.

Fields timely appeals.

## Analysis

## I.

Fields asserts one point on appeal. He contends that the trial court erred in overruling his objection to the prosecutor's above-recited line of questions during voir dire. On appeal, Fields claims that the question "argued the State's theory of the case and sought a commitment . . . thereby pre-conditioning the jurors." However, this is *not* the same objection that Fields asserted to the trial court during voir dire.

During voir dire, Fields's objection was, "I don't understand how this line of questioning is going to the heart of who can be fair and impartial in this case" and in the second objection to the haunted house question, Fields added, "[h]ow does that go to whether or not this person can . . . judge the credibility of witnesses."

The theory upon which the objection was made must be the same theory that is presented in the motion for a new trial *and the same theory that is raised on appeal*. *State v. Lewis*, 243 S.W.3d 523, 524 (Mo. App. W.D. 2008) (citing *State v. Tisius*, 92 S.W.3d 751, 767 (Mo. banc 2002)). An appellant may not "broaden or change allegations of error on appeal." *Id.* (citing *State v. Cartwright*, 17 S.W.3d 149, 154 (Mo. App. E.D. 2000)).

4

Fields has not maintained the same theory for his objections below as compared to his objection lodged on appeal. During voir dire, Fields objected that the question did not go "to the heart of who can be fair and impartial"—essentially arguing that the prosecutor's questions were not relevant to the purposes of a voir dire examination. But on appeal, Fields asserts an expanded basis for his objection—that the question "argued the State's theory of the case and sought a commitment . . . thereby pre-conditioning the jurors." Because an appellant is not permitted to "broaden or change allegations of error on appeal," *Lewis*, 243 S.W.3d at 524, Fields has not preserved his *current* claim of error for appellate review.

Where a claim of error is not properly preserved for appellate review, we may review an appellant's claim for plain error. *State v. Clay*, 533 S.W.3d 710, 718 (Mo. banc 2017). "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20; *State v. Johnson*, 524 S.W.3d 505, 513 (Mo. banc 2017). Under the plain error standard of review, we must first determine whether the claimed error is, in fact, plain error affecting substantial rights. *Id.* "An error is plain if it is 'evident, obvious, and clear.'" *Id.* If plain error affecting substantial rights is found, we must next determine whether the error resulted in manifest injustice or a miscarriage of justice. *Id.* "'Manifest injustice is determined by the facts and circumstances of the case, and the defendant bears the burden of establishing manifest injustice.'" *Id.* (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)). Here, we conclude that the trial court did not err, plainly or otherwise, nor can Fields establish any manifest injustice to the prosecutor's line of questioning during voir dire.

Though "[a] defendant is entitled to a fair and impartial jury," *State v. Celian*, 613 S.W.3d 380, 385 (Mo. App. E.D. 2020) (citing *State v. Clark*, 981 S.W.2d 143, 146 (Mo. banc 1998)), and

5

"'[t]he purpose of voir dire is to discover bias or prejudice in order to select a fair and impartial jury,'" *State v. Conaway*, 557 S.W.3d 372, 377 (Mo. App. W.D. 2018) (quoting *Clark*, 981 S.W.2d at 146), "[t]here is no rigid formula for an adequate voir dire." *State v. Ousley*, 419 S.W.3d 65, 73 (Mo. banc 2013). "Consequently, a liberal latitude is allowed in the examination of jurors, as long as the scope of voir dire remains commensurate with its purpose to discover bias or prejudice in order to select a fair and impartial jury." *Id.*; *see also Clark*, 981 S.W.2d at 146 (explaining that the trial court is given wide discretion over the examination of prospective jurors during voir dire).

Bias or prejudice often cannot be ferreted out with "general fairness and follow-the-law questions." *State v. Nicklasson*, 967 S.W.2d 596, 611 (Mo. banc 1988). Thus, "[s]ome inquiry into relevant and critical facts of the case is essential to the search for bias." *State v. Ezell*, 233 S.W.3d 251, 253 (Mo. App. W.D. 2007). A critical fact is a fact that has the substantial potential to expose a disqualifying bias. *Clark*, 981 S.W.2d at 147. In addition to exposing relevant and critical facts, "[i]t is proper to ask venirepersons questions to determine whether they have any preconceived notions about the law which would impede their ability to follow instructions." *State v. Cummings*, 134 S.W.3d 94, 108 (Mo. App. S.D. 2004). Counsel may not, however, try the case on voir dire, seek to precondition jurors to react a certain way, or elicit a commitment from the jurors. *Ousley*, 419 S.W.3d at 73; *see also State v. Holmquest*, 243 S.W.3d 444, 451 (Mo. App. W.D. 2007).

Contrary to his objections below during voir dire, the prosecutor's questioning was aimed at uncovering whether the venire panel could be fair and impartial. The prosecutor's subject line of questioning objected to did not require the venire panel to speculate on the weight they might give to certain testimony, as Fields asserted in his motion for a new trial. Nor did the subject questions objected to seek to precondition the venire panel or elicit a commitment from prospective

6

jurors, as Fields now claims on appeal. Instead, the questions sought to uncover bias by eliciting whether the venire panel could fairly and impartially judge a witness's credibility in accordance with the trial court's credibility jury instruction.[3] *See State v. Wilson*, 998 S.W.2d 202, 205 (Mo. App. W.D. 1999) (explaining that where a juror has demonstrated that they cannot follow the trial court's instruction, he or she must be stricken).

In comparison, in *State v. Norton*, 681 S.W.2d 497 (Mo. App. E.D. 1984), the prosecutor asked, "does everyone on the jury panel agree, that a victim of a rape would prefer not to have to testify to the details of such a crime in a public trial?" The Court held that that question was improper because "[i]t was a subtle attempt to commit the jurors." *Id.* at 499. The Court further noted that questions "requiring prospective jurors to 'agree' with some proposition stands in danger of violating the proscription against seeking commitments during voir dire examination." *Id.* ("[E]ven though the subject matter may be appropriate for voir dire interrogation, the manner of asking, the phrasing of the question, may render it improper."). The fundamental difference between the question in *Norton* and the prosecutor's question here is that, here, the question did not seek to commit the jurors, subtly or otherwise.

Similarly, in *Celian*, the Court found that the prosecution improperly described "in depth what it believed its evidence would be and how that evidence inculpated Celian." *Celian*, 613 S.W.3d at 387. The prosecutor in *Celian* made statements and asked questions wherein he or she

---

[3] The instruction from the trial court about witness credibility stated:

In your determination of the facts, you alone must decide upon the believability of the witnesses and the weight and value of the evidence.

In determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness'[s] manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, or prejudice the witness may have; the reasonableness of the witness'[s] testimony considered in the light of all of the evidence in the case; and any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness.

stated "our evidence will show," "the State's evidence will be," "does everybody agree then," and "[w]ould everybody agree with that general proposition?" *Id.* at 383. The prosecutor even went so far as to describe the State's theory regarding how the crime occurred. *Id.* ("Came up behind the victim's car, alongside of it to the right side, and shot the rear—rear right tire, and disabled it. The tire went flat and the victims went to the side of the road."). Here, the prosecutor's question was vastly different than those that were employed in *Celian*. The prosecutor in the present case did not divulge any critical or non-critical facts or the State's evidence regarding such facts in such a way as to seek a commitment from the venire panel as to the State's case in chief.

Conversely, this case is akin to *Ezell*, wherein the prosecutor asked whether any member of the venire panel would automatically disbelieve the testimony of the child-victim because she did not report the abuse until months later. *Ezell*, 233 S.W.3d at 252. We held that it was proper to ask whether any venireperson would automatically dismiss such a late charge by a child-victim without hearing the evidence. *Id.* at 253. The prosecutor here, just as in *Ezell*, was entitled to ask whether any member of the venire panel would automatically disbelieve a witness that could not describe a set of facts in the identical fashion every time, in contravention of the breadth and scope of the numerous credibility considerations that the trial court's credibility instruction to the jury implicated.[4]

We, therefore, conclude that there was no error in the trial court's ruling regarding voir dire, plain or otherwise.

We likewise conclude that the jury's verdict, in itself, demonstrates that even were we to conclude that the trial court's ruling was erroneous, which we do not, Fields cannot demonstrate

---

[4] Notably, Fields did not object at trial, and does not challenge on appeal, the question by which the prosecutor directly asked jurors whether they would "hold it against the State's witnesses if they can't tell the story the exact same with the exact same detail every single time." If *that* question was unobjectionable, we fail to see how the prosecutor's use of hypotheticals to explore the same issue could constitute reversible error.

any manifest injustice.  For, here, the jury clearly did *not* credit the victim's testimony in the fashion that the prosecution had hoped for, acquitting Fields of the charged offenses of forcible rape and forcible sodomy (the victim had also described vaginal licking and penetration by Fields) and only convicting Fields of the lesser-included offense of attempted forcible rape.  *Cf. Norton*, 681 S.W.2d at 499 ("[Q]uestions related only to the sexual offenses and the jury found the defendant not guilty of those crimes.  Obviously, he suffered no injury . . . .").

Fields's point on appeal is denied.

## Conclusion

Finding no error below, plain or otherwise, we affirm the judgment of the trial court.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Presiding Judge

Alok Ahuja and Karen King Mitchell, Judges, concur.