

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,          )
                            )
    Plaintiff-Respondent,   )
                            )
v.                          )          No. SD38329
                            )
DAMYON WAYNE FISHER,        )          **Filed:  December 31, 2024**
                            )
    Defendant-Appellant.    )

APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Gayle L. Crane

**<u>AFFIRMED</u>**

Damyon Wayne Fisher ("Defendant") challenges his convictions, after a jury trial, of one count of second-degree murder (*see* section 565.021, RSMo 2016, including, as applicable, statutory changes effective January 1, 2017) and one count of armed criminal action (*see* section 571.015, RSMo Cum. Supp. 2020).  Defendant's sole point on appeal claims the circuit court abused its discretion in sustaining the prosecutor's objection to a question defense counsel asked during *voir dire*.  Because the question asked the panel members about how they personally would act in a hypothetical situation that strongly mirrored the alleged facts of the State's case against Defendant, the circuit court did not abuse its discretion in sustaining the State's objection.

1

## Standard of Review

"The trial judge is given wide discretion in conducting voir dire and determining the appropriateness of specific voir dire questions." *State v. Johnson*, 207 S.W.3d 24, 40 (Mo. banc 2006). "The trial court's voir dire ruling will be reversed only where an abuse of discretion is found and the defendant can demonstrate prejudice." *Id.* "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

## The Facts[1]

Victim went with Defendant's father ("Father") to Defendant's residence to inspect a vehicle that Father said he would give to Victim to sell as a means of satisfying a debt that Father owed Victim. While they were sitting at Defendant's dining room table discussing the vehicle, Defendant objected to the sale, claiming Father had given Defendant the vehicle as a gift. Then, according to Defendant's and Father's testimony at trial, Victim got upset with Defendant and angrily stood up, raising his hands in the air and taking two steps toward Defendant. Defendant drew a 9-millimeter pistol from his back pocket and shot Victim one time in the chest, killing him. Defendant testified at trial that he shot Victim in self-defense, which was inconsistent with previous versions of what Defendant and Father said took place that day.

Defendant originally told law enforcement that Victim never came to his residence at all. On a later occasion, Defendant told law enforcement that Father had killed Victim while

---

[1] Defendant does not challenge the sufficiency of the evidence to support his convictions. As required by our standard of review, we view the evidence "in the light most favorable to the verdict." *Johnson*, 207 S.W.3d at 34. Any contrary evidence that we mention in our opinion is only mentioned to provide context for Defendant's arguments on appeal.

2

Defendant was outside the house. Finally, Defendant told the police that he spoke to Victim on the phone, and when Victim told Defendant that he was going to come to Defendant's residence to get the vehicle and money for the debt that Father owed him, Defendant warned Victim that, if he arrived, "[Y]ou may catch a bullet." "Right afterwards[,]" Defendant stated that he was "just kidding[.]" Father's sole pre-trial statement to law enforcement was that Defendant shot Victim in the back while Victim was turning away from Defendant.

After Victim was shot and killed, neither Defendant nor Father contacted law enforcement about the shooting. Instead, Defendant covered Victim's body in a blanket and floor rug, and with Father's help, transported the body to Father's property, where they dumped Victim's body down a well that was approximately fifty-feet deep. Over the next several days, Defendant and Father methodically buried Victim's body by filling the well with dirt and rocks. When the well was completely filled, they turned the surface area into a flower garden. Over a month later, law enforcement executed a search warrant and recovered Victim's body by excavating the dirt and rock that covered it.

## Analysis

"A defendant is entitled to a fair and impartial jury." *Johnson*, 207 S.W.3d at 40. "A necessary component of the guarantee for an impartial jury is an adequate *voir dire* that identifies unqualified jurors." *Id.* Although "counsel may not try the case on voir dire[,]" *State v. Clark*, 981 S.W.2d 143, 146 (Mo. banc 1998), "some inquiry into the critical facts of the case is essential to a defendant's right to search for bias and prejudice in the jury[.]" *Id.* at 147. "A critical fact is a fact that has the substantial potential to expose a disqualifying bias." *State v. Fields*, 624 S.W.3d 414, 418 (Mo. App. W.D. 2021).

3

In contrast, "the parties may not attempt to elicit a commitment from jurors how *they* would react to hypothetical facts." ***Potter v. State***, 679 S.W.3d 50, 56 (Mo. App. E.D. 2023) (emphasis added) (quoting ***State v. Celian***, 613 S.W.3d 380, 385 (Mo. App. E.D. 2020)); *see also* ***State v. Jolliff***, 867 S.W.2d 256, 260 (Mo. App. E.D. 1993) ("It is reversible error for an attorney during voir dire to attempt to obtain from the venire a commitment or pledge to act in a specific way if certain facts are elicited or certain contingencies arise at trial"). "Questions beginning with 'could' or 'will you be able' generally do not commit a juror to a verdict." ***Celian***, 613 S.W.3d at 386. "However, queries touching upon a prospective juror's expectations or feelings about what *they* 'would' do or believe in light of particular facts about the case are irrelevant and properly excluded." ***Id.*** (emphasis added).

> Here, the question to the *venire* from defense counsel at issue was,
>
> So, this is kind of hypothetical and it may be kind of tricky, I hope I can make the question make sense. But if there was something that had happened in your home of a violent nature where someone in the household is responsible is there anyone who would consider talking to somebody else before making any other calls to alert authorities?

The prosecutor immediately objected to the question on the grounds that the question was too "closely aligned with the facts of the case" and defense counsel was asking the jury to "commit [to] whether or not . . . they [would] have acted similarly to [Defendant]." The trial judge sustained the objection, and rightly so.

The circuit court did not abuse its discretion in sustaining the State's objection to defense counsel's improper question because it sought a commitment from the *venire* by submitting a hypothetical fact pattern that strongly mirrored the evidence anticipated during trial. That anticipated evidence was that Defendant did not call law enforcement to report

4

Victim's death after Defendant supposedly used deadly force in self-defense, choosing instead to hide Victim's body by burying it inside a fifty-foot-deep well.

Defense counsel's question asked the individual members of the *venire* about whether they, *personally*, "would" immediately "alert authorities" about an act of a "violent nature" in *their* home or delay by making a phone call to someone else. Defense counsel's question was not a generic inquiry into critical facts of the case that would have a "substantial potential to expose a disqualifying bias." ***Fields***, 624 S.W.3d at 418. Instead, it "attempted to precondition the panel members' minds to react in a particular way to the anticipated evidence[.]" ***Celian***, 613 S.W.3d at 387; *see also* ***Potter***, 679 S.W.3d at 55-56 ("[P]hrasing a voir dire question in such a manner which pre-conditions the panel members' minds to react, even subconsciously, in a particular way to anticipate[d] evidence is an abuse of counsel's privilege to examine prospective jurors") (internal quotation and citation omitted).

Defense counsel's hypothetical question was also confusing -- counsel even implicitly admitted it to be so -- and the question did not fulfill the established purpose of *voir dire* examination of uncovering bias or prejudice in jurors. *See* ***Celian***, 613 S.W.3d at 387 (the State's question on *voir dire* detailing facts of the case "departed from the established purpose of *voir dire*—to discover bias or prejudice in order to select a fair and impartial jury—to instead sow prejudice in the venire").

The circuit court did not abuse its discretion in sustaining the prosecutor's objection to defense counsel's question. Defendant's point is denied, and the judgment is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR
JEFFREY W. BATES, J. – CONCURS
JACK A. L. GOODMAN, J. – CONCURS