

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| CHARLES T. THOMPSON, | ) | |
| | ) | |
| Appellant, | ) | WD82893 |
| v. | ) | |
| | ) | OPINION FILED: |
| STATE OF MISSOURI, | ) | August 25, 2020 |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Patricia S. Joyce, Judge**

**Before Division Two:** Karen King Mitchell, Presiding Judge, and
Anthony Rex Gabbert and W. Douglas Thomson, Judges

Charles Thompson appeals, following an evidentiary hearing, the denial of his Rule 29.15 motion for post-conviction relief.[1] Thompson raises two points on appeal. He argues that trial counsel provided ineffective assistance by failing to review State's Exhibit 151 before trial to ensure it had been properly redacted to delete references to uncharged misconduct, and he argues that appellate counsel provided ineffective assistance by failing to raise a claim on appeal challenging the admission of a State's expert's testimony as to how gunshot residue may have

---

[1] All rule references are to the Missouri Supreme Court Rules (2019).

ended up on Thompson's clothing. The motion court denied both claims. Finding no error, we affirm.

## Background[2]

On Saturday, February 14, 2015, Thompson drove to Jefferson City with a female acquaintance. The couple stayed at an apartment belonging to Thompson's friend. At some point on Saturday, Thompson took a gun from an upstairs closet.

On Sunday morning, Thompson left the apartment and met with Vincent Smith. Thompson and Smith talked about "going to take something from someone." Thompson and Smith decided to take drugs from Johnny Evans. Thompson and Smith knew that Evans would have drugs and money based on conversations with people in the neighborhood.

Thompson and Smith asked Robert Burks for a ride to East High Street, where Evans lived. Thompson and Smith told Burks that they were going to East High Street to "get a lick off some weed." A "lick" refers to obtaining drugs or money illegally. Burks drove Thompson and Smith to East High Street.

Thompson and Smith exited Burks's car and headed toward Evans's apartment. Burks saw Thompson pull a gun from his pocket. Thompson and Smith approached the back door of Evans's apartment. Smith kicked in the back door, and the two men entered. Smith testified that he and Thompson entered Evans's apartment to take drugs and money.

Thompson and Smith found Evans lying on a couch in his living room. Thompson and Smith asked Evans for drugs. Evans said that he did not know what they were talking about. Smith began looking around the living room and then heard a gunshot. Smith looked up and saw

---

[2] The facts underlying Thompson's charges, trial, and conviction are taken largely from this court's opinion in his direct appeal, *State v. Thompson*, 538 S.W.3d 390, 391-92 (Mo. App. W.D. 2018), without further attribution.

Thompson holding a gun. Thompson fired another shot, which Smith saw hit Evans. Thompson and Smith fled the apartment, and left the scene in Burks's car. Evans later died.

The State charged Thompson with second-degree murder, first-degree burglary, attempted first-degree robbery, and armed criminal action. The jury found Thompson guilty of first-degree burglary but acquitted Thompson on the other charges. Thompson waived jury sentencing, and the trial court imposed a fifteen-year sentence for first-degree burglary.

Thompson appealed his conviction and sentence to this court, raising two claims of error: (1) insufficient evidence to support his conviction, and (2) plain error in failing to afford Thompson allocution. *State v. Thompson*, 538 S.W.3d 390, 391 (Mo. App. W.D. 2018). This court affirmed the judgment below. *Id.* at 396.

Thompson subsequently filed a *pro se* Rule 29.15 motion. Appointed counsel filed an amended motion, alleging—as relevant to this appeal—that trial counsel was ineffective in failing to review State's Exhibit 151 before it was admitted and published to the jury and that appellate counsel was ineffective for failing to raise a claim on appeal challenging admission of testimony from a State's expert witness as to how gunshot residue may have ended up on Thompson's clothing. The motion court held an evidentiary hearing, wherein it received testimony from both trial counsel and appellate counsel, as well as Movant's Exhibit 151 (represented to be a copy of State's Exhibit 151).

The motion court issued findings of fact and conclusions of law, overruling Thompson's motion, finding that trial counsel's conduct was based upon reasonable trial strategy and that Thompson failed to prove prejudice under either claim of ineffective assistance. Thompson appeals.

**Standard of Review**

We review the motion court's findings of fact and conclusions of law for clear error. Rule 29.15(k). "Findings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake was made." *Edwards v. State*, 200 S.W.3d 500, 509 (Mo. banc 2006) (quoting *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000)). "The motion court's findings of fact and conclusions of law are presumed to be correct." *Id.*

**Analysis**

Thompson raises two claims on appeal. First, he argues that trial counsel was ineffective for "failing to review State's Ex. 151 before it was admitted and published to the jury" to ensure that it had been properly redacted to remove all references to uncharged misconduct. Second, he claims that appellate counsel was ineffective in failing to raise a claim on appeal challenging the admission of testimony from a State's expert regarding how gunshot residue may have gotten on Thompson's clothing.

**A. Thompson failed to prove ineffective assistance of trial counsel.**

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test to prove his or her claims." *Anderson v. State*, 564 S.W.3d 592, 600 (Mo. banc 2018). "Under *Strickland*, Movant must demonstrate: (1) his trial counsel failed to exercise the level of skill and diligence reasonably competent trial counsel would in a similar situation, and (2) [movant] was prejudiced by that failure." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Trial strategy decisions may be a basis for finding ineffective assistance of counsel only if that decision was unreasonable." *Id.* "[S]trategic choices made after a thorough

4

investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable . . . .” *Id*. (quoting *Dorsey v. State*, 448 S.W.3d 276, 287 (Mo. banc 2014)).

To establish a right to relief under *Strickland*, a movant must also prove prejudice. *Id*. at 601. “Prejudice occurs when ‘there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’” *Id*. (quoting *Deck v. State*, 68 S.W.3d 418, 429 (Mo. banc 2002)).

Here, Thompson argues that trial counsel was ineffective for failing to review State’s Exhibit 151 (a video of his police interrogation) before it was published for the jury to ensure that all references to uncharged misconduct had been redacted.[3] Thompson claims that the exhibit had not been properly redacted and, as a result, the jury heard evidence that he had been involved in other uncharged crimes. To support this claim at the evidentiary hearing below, Thompson submitted the trial transcript, a copy of State’s Exhibit 151, and testimony from trial counsel.

In his amended motion, Thompson quoted the following colloquy from the trial transcript, which occurred before State’s Exhibit 151 was played for the jury:

[TRIAL COUNSEL]: Judge, can we approach briefly, please?

THE COURT: Well, we can.

(Counsel approached the bench, and the following proceedings were had:)

[TRIAL COUNSEL]: Judge, my understanding is the exhibit the State is going to introduce is a redacted copy of my client’s interview. I have not yet reviewed that redacted interview. The State’s assured me that they’ve taken out all prior uncharged bad acts and that this is dealing simply with his interview regarding just this alleged incident and his denial about his involvement. So my objection will be no objection contingent upon the fact that the State has told me —

---

[3] Generally speaking, “[t]he law permits the State to try a defendant only for the offense for which he is on trial[,] and [t]his precludes the State from unjustifiably introducing evidence of a defendant’s prior, uncharged crimes or bad acts.” *State v. Garretson*, 598 S.W.3d 643, 653 (Mo. App. W.D. 2020) (quoting *State v. Lutes*, 557 S.W.3d 384, 390 (Mo. App. W.D. 2018)).

THE COURT: Well, it would be a mistrial if it's not done the right way or something. Okay.

[TRIAL COUNSEL]: Thank you, Judge.

[PROSECUTOR]: Is there specific areas that —

[TRIAL COUNSEL]: No.

[PROSECUTOR]: Is there specific areas that the Defense would like taken out? We took out the prior arrest and Greg's confrontation about the prior robbery. We left in that he's never been arrested, he doesn't have any convictions. There is a part where he has done something illegal and they're asking him, "Have you ever done anything illegal and been caught?" The other part is he smokes marijuana but does nothing else.

[TRIAL COUNSEL]: And I would have no objection to any of that information coming in.

THE COURT: If anything shows up, I want you to let me know, and you guys stop it immediately, and we'll try to —

[TRIAL COUNSEL]: Thank you, Judge.

THE COURT: Okay. Thank you. All right.

Thompson also relied on the following colloquy, occurring during the playing of State's

Exhibit 151:

(A portion of State's Exhibit 151 was played for the jury.)

(Counsel approached the bench, and the following proceedings were had:)

[TRIAL COUNSEL]: Judge, based on the Court's ruling regarding this evidence in this video, the State said they had redacted all information of prior uncharged bad acts of which two of those things were just discussed about how Kilavonte said that Little Charles robbed a drug dealer, and before that they talked again about how he was out robbing people.

At this time, I'm not moving for a mistrial, but I would like for the showing of this video which clearly has not been redacted to be stopped and for the Court to give a curing instruction telling the jury they can disregard any portion of this video.

THE COURT: What portion did you want me to go back to?

6

[TRIAL COUNSEL]: Judge, I would ask that we not show any more of the clip of Officer Bestgen and instruct the jury to disregard all testimony of Officer Bestgen in this video.

[PROSECUTOR]: He's talking about hitting East High Street and drug dealing, and they said that Johnny was a drug dealer. That's what they're talking about.

[TRIAL COUNSEL]: Is that what he is?

[PROSECUTOR]: Yeah. And they said that Kilavonte was in this. That's the way I took it. He did talk about the other robbery earlier where he said he robbed somebody in broad daylight, and we had cut that out. I assume this is talking about hitting Johnny Evans. We can stop here. This is the same thing.

THE COURT: Okay. All right. That was what my instruction — That's what I —

[TRIAL COUNSEL]: If I misunderstood what the question was —

[PROSECUTOR]: That's the way I took it.

THE COURT: Did you want to repeat what you said?

[TRIAL COUNSEL]: Judge, it's my understanding now that [Prosecutor]'s statement is correct. I would withdraw my objection and request.

THE COURT: The Court had listened to it when it came in, and I believed too — Because I was ready for you to make an objection, and the next question seemed to tie into this. So we're done with this then?

[TRIAL COUNSEL]: If you guys want to play it, I don't mind.

[PROSECUTOR]: That's the way I took it.

THE COURT: Okay. We're gonna continue playing it then?

[TRIAL COUNSEL]: I have no objection.

THE COURT: Okay.

(Proceedings returned to open court.)

Other than what was said in the foregoing colloquies, Thompson did not identify any particular statements on the video referencing uncharged misconduct, and nothing in the trial record indicates which parts of State's Exhibit 151 were played for the jury and which parts were not.

On appeal, however, Thompson argues that the following statements from an officer were played for the jury immediately preceding trial counsel's objection:

> Now hear me out. This ain't the only robbery you did while you were in town. This ain't the only robbery you did while you were in town. Valentine's day. You remember Valentine's Day specifically, right? . . . You did a robbery on Valentine's Day. During the day! You did it. Right there on Elizabeth Street. Right there those two people. That come over to score some dope. You robbed 'em. And guess what? That got called in, and that got reported . . . You robbed 'em. Right in the street . . . Listen! Listen! Listen to me. You robbed them in the street. And how did you rob 'em? You had a gun.

(App. Br. 17) (citing Ex. 151 at 7:13:00).[4]

We have no way to verify where, in the video, the playback was stopped for trial counsel's objection; Thompson did not play the video at the evidentiary hearing, nor did he question trial counsel about any specific references within the exhibit. In fact, trial counsel testified that he did not recall "what the uncharged conduct that . . . Thompson now complains of in the video was." And the prosecutor's representation in the trial transcript indicates that a discussion of an earlier robbery "in broad daylight" had been redacted, so it is unclear to this court if the portion Thompson relies on now, for the first time on appeal, was even played for the jury. Furthermore, approximately one hour's worth of the video is nothing more than Thompson alone and sleeping in the interview room; because of this, we sincerely doubt that the exhibit we have been provided was played in its entirety for the jury at trial. And, without specific time stamps for when the video was stopped and started for the jury, we simply cannot verify whether the jury even heard the statements that Thompson complains about now on appeal.

But, regardless of whether the jury heard the complained-of statements, we cannot say that the motion court clearly erred in rejecting Thompson's claim, as he failed to prove any prejudice.

---

[4] There was no transcript accompanying Movant's Exhibit 151 at the evidentiary hearing. The statements identified appear to be Thompson's counsel's own transcription. The State has not challenged Thompson's depiction of these statements.

At trial, though counsel initially objected and argued that the tape had not been redacted as agreed, upon further discussion, trial counsel agreed with the prosecutor that, in fact, the portion that he objected to did not reference uncharged crimes and, instead, referred only to the charged crime. And, although trial counsel did not review the tape before it was played at trial, there is no reason to believe that trial counsel would have reached a different conclusion if he had viewed it earlier. Furthermore, trial counsel testified at the evidentiary hearing that he had a strategic purpose in allowing the jury to hear the interview:

> [B]ased on my recollection, that video was incredibly beneficial for — for our case. We were able, basically, to get testimony in without being subject to cross-examination based on all the information that came in with that video. Charles was able to talk about how he played football in high school, that he lived with his parents; he knew both their names. Incredibly relevant personal information that didn't subject him to cross-examination far outweighed, in my belie[f], any prejudicial effect that the prior uncharged conduct had with the jury.

While we recognize that trial counsel did not articulate a strategy for not *reviewing* the video before trial, he very clearly articulated a strategy for wanting a large portion of the video played for the jury. And that strategy appears to have been effective in light of the fact that Thompson was acquitted on three of the four charges.

But the larger problem is that Thompson failed to demonstrate any prejudice insofar as he did not prove that, had counsel viewed the video beforehand, anything about Thompson's trial would have changed. Trial counsel wanted the video in to highlight Thompson's positive attributes without subjecting him to cross-examination, and, upon actually viewing the video, trial counsel agreed that he was mistaken about his initial impression that certain statements referenced uncharged misconduct. For all of these reasons, Point I is denied.

9

**B. Thompson failed to prove ineffective assistance of appellate counsel.**

In his second point on appeal, Thompson argues that appellate counsel was ineffective in failing to raise a claim on appeal challenging the admission of testimony from a State's expert as to how gunshot residue may have been deposited on Thompson's clothing.

"To be entitled to post-conviction relief based on ineffective assistance of appellate counsel, the movant must satisfy the two-prong test set out in *Strickland v. Washington*[.]" *Weinert v. State*, 593 S.W.3d 666, 670 (Mo. App. E.D. 2020). "The movant must first establish appellate counsel's performance was deficient." *Id*. "A movant must also demonstrate the deficient performance resulted in prejudice to his defense." *Id.* "For a failure to raise a claim on appeal, a movant must show a claim of error is 'so obvious from the record that a competent and effective lawyer would have recognized it and asserted it.'" *Id*. at 671 (quoting *Murray v. State*, 511 S.W.3d 442, 446 (Mo. App. E.D. 2017)). "An appellate attorney does not have to raise every preserved issue." *Id*. "Appellate counsel can strategically decide to 'winnow out' non-frivolous arguments in favor of other reasonable arguments." *Id*. (quoting *Murray*, 511 S.W.3d at 446).

At trial, the State presented testimony from Katie Corcoran, a criminalist and expert in the field of gunshot residue analysis. After certifying Corcoran as an expert, the prosecutor asked her, generally, how gunshot residue (GSR) is deposited, and she testified to the following, without objection:

> A. . . . GSR is deposited when the primer is ignited and — and vaporizes. And when it condenses again, the particles are formed, and they will fall anywhere within the vicinity of the firearm discharge.
>
> Q. And can it be transferred?
>
> A. Yes.
>
> Q. How is that?

10

A. Anytime a surface with GSR on it comes into contact with a surface without GSR on it, it is possible for GSR to transfer.

After Corcoran testified about her findings in Thompson's case, the prosecutor asked if she "ma[d]e any conclusions as to how the GSR got onto [Thompson's] clothing . . . ?" Trial counsel objected, arguing that the answer would be speculation. The trial court overruled trial counsel's objection, and Corcoran testified: "I concluded that the gunshot residue could have come from being in the vicinity of a firearms discharge or having come into contact with something that had GSR on it." In Thompson's motion for new trial, trial counsel included a claim of error in overruling his objection to Corcoran's testimony.

Appellate counsel did not raise this claim of error on appeal. When asked why he did not do so, appellate counsel testified:

> I think that my initial assessment was that it would be difficult to prove prejudice, even though that issue was fully preserved. I do recall that there was a very small amount of gunshot residue, and I believe that Corcoran's testimony — or testimony adduced at trial was also something of the nature. That, you know, this — this spec[k], for lack of a better term, of gunshot residue could have come from, you know, any number of different sources. And it wasn't necessarily clear — it was at least as unclear of the origin of the — this gunshot residue spec[k] as it would have been inference about its origin.

Appellate counsel explained that, at the time he filed Thompson's appellate brief, he did not believe the claim Thompson advocates would have been successful on appeal. Appellate counsel testified, "I raised the claims that I felt had the best chance at success on merits."

Appellate counsel's assessment of the relative strength of this claim was accurate; therefore, his strategy was reasonable. To begin, the testimony trial counsel objected to was not materially different from Corcoran's unobjected-to testimony about how GSR is deposited, generally. In both instances, Corcoran testified that GSR was likely present because the clothing was either in close proximity to a firearm discharge or came in contact with something that had

11

GSR on it. Thus, even if trial counsel's objection were meritorious, Corcoran's answers were cumulative to other evidence properly admitted. And "[i]mproperly[]admitted evidence is not prejudicial when essentially the same facts are established by other evidence[.]" *State v. Davidson*, 599 S.W.3d 257, 263-64 (Mo. App. S.D. 2020) (quoting *State v. Newman*, 583 S.W.3d 479, 483 (Mo. App. S.D. 2019)). Furthermore, Corcoran did not testify as to how GSR, in fact, ended up on Thompson's clothing; instead, she testified only how it "could have" arrived there, which was consistent with how GSR is deposited on anything. Accordingly, even if appellate counsel had raised this claim, it would not have succeeded on appeal.

In short, appellate counsel's decision was the result of reasonable strategy, and Thompson did not demonstrate any resulting prejudice. Therefore, Point II is denied.

## Conclusion

Thompson failed to prove that either trial or appellate counsel provided ineffective assistance. The motion court's judgment is affirmed.

_____
Karen King Mitchell, Presiding Judge

Anthony Rex Gabbert and W. Douglas Thomson, Judges, concur.